Ralph GRANT, Petitioner,

v.

Stephen DALSHEIM, Superintendent, Respondent.

No. 81 Civ. 5843.

United States District Court,
S. D. New York.

April 14, 1982.

Ralph Grant, pro se.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for respondent; Alan S. Adolph, Asst. Atty. Gen., Frederic L. Lieberman, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, convicted of manslaughter in the first degree upon a jury verdict entered in the Supreme Court of the State of New York, Queens County, and now serving a sentence of 6–18 years, petitions for his release upon a federal writ of habeas corpus pursuant to 28 U.S.C., section 2254. The judgment of conviction was affirmed by the Appellate Division and leave to appeal to the Court of Appeals was denied.[1]

The claims upon which petitioner seeks to void his judgment of conviction for violation of his federal constitutional right of due process of law under the Fourteenth Amendment are: (1) that his guilt was not established beyond a reasonable doubt; (2) that the prosecution deprived him of his right to a fair trial; and (3) that the trial judge's charge to the jury was so defective as to deprive him of his right to a fair trial.

■ The State urges dismissal on the ground that the petitioner has failed to exhaust available state remedies as required by section 2254. However, a reading of the petitioner's brief submitted to the Appellate Division indicates that each contention here urged in support of a federal writ was advanced as a violation of petitioner's federally protected constitutional rights.[2] Indeed, the specific amendment to the Federal Constitution which it was alleged was violated was set forth and decisions of the Supreme Court of the United States cited in support of petitioner's contentions.[3] The fact that the State Appellate Court affirmed the conviction without opinion is not determinative of the issue.[4] Thus we conclude that there was exhaustion of state remedies and proceed to consider petitioner's claim upon the merits.

■ First, petitioner contends that the State failed to prove beyond a reasonable doubt that petitioner killed the victim. The standard to be applied in deciding this claim of violation of a federal constitutional right, is that set forth in *Jackson v. Virginia*,[5] to wit, whether after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could find that the essential elements of the crime had been established beyond a reasonable doubt.

■ The People offered the testimony of petitioner's wife as to events preceding and the events surrounding the homicide. She testified that petitioner discovered her and the victim naked in bed in her apartment; that after fighting with her paramour, the petitioner went to the kitchen and with a fork in hand re-entered the bedroom where the men continued to fight; that she fled to the street and in her distraught state flagged a passing police car; that she and the police officers were ascending the stairway on their way to the apartment when the petitioner passed by them as he was descending. Upon their entry into the apartment, blood was all over the place.

---

1. 54 N.Y.2d 756, 443 N.Y.S.2d 1047, 426 N.E.2d 771 (1981).

2. *See* Appellant's Brief, "Questions Presented," at 2. Also pp. 29, 36, 38.

3. *See* Points I, II and III (pp. 1 & 2) of Appellant's Brief.

4. *See Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978).

5. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The police officers testified in substance to like effect and that they found the paramour slouched or draped over the tub in a pool of blood bleeding profusely and apparently dead. They saw a carving fork stuck in the floor. The officers immediately retraced their steps, saw petitioner running and about a block and a half from the apartment they apprehended him after a slight struggle following which he was taken to the apartment. A medical examiner's representative who arrived soon thereafter certified that the assaulted man died as a result of profuse bleeding and numerous stab wounds inflicted by a carving fork.

The State also offered evidence of a number of spontaneous and blurted out statements by petitioner made immediately upon his apprehension and later in the apartment. The spontaneous utterances were admissions by petitioner that he had killed the victim and the reasons that motivated him. While in the apartment, petitioner, after he was given the *Miranda* warnings by a detective, again admitted he had killed the decedent and described in detail that he had obtained the fork from the kitchen, returned to the bedroom where he used it in a continued assault upon the decedent. The prosecution's case also included evidence to warrant the jury's consideration of flight as circumstantial evidence of consciousness of guilt. Upon the totality of the record, there was more than sufficient evidence upon which any rational juror could find guilt beyond a reasonable doubt. Indeed, the evidence of petitioner's guilt was substantial.

■ Next, petitioner contends that the prosecutor's summation deprived him of his right to a fundamentally fair trial. The prosecutor's remarks must be considered in context and in relationship to the summation of petitioner's counsel.[6] A review of the prosecutor's summation indicates that it was in response to a highly emotional plea on behalf of petitioner based upon finding his wife in *flagrante delicto*. The prosecutor was justified in using robust argument in response to avoid the substitution of sympathy for reasoned consideration of the evidence offered to sustain the indictment charge. The prosecution had the right to ward off the emotional appeal and to remind the jurors that no matter how enraged petitioner may have been because he found his wife in bed with another man, he had no right to kill him—that they were to decide the case upon the evidence and the applicable law.

■ Equally without substance is petitioner's further attack upon the prosecutor's summation because he "dwelt excessively upon [the victim's] injuries and the weapon" and at another point referred to the jury as a "duly constituted body of the State of New York" which should perform as the deceased's representative. The latter statement was in direct response to an argument made by petitioner's counsel. The former was a proper reference to the nature of petitioner's wounds. The basic issue is not whether petitioner was accorded a perfect and flawless trial, but whether he had a fair trial. The issue is not to be determined by isolating a single incident but against the totality of the trial. "It is a commonplace in the administration of criminal justice that the actualities of a long trial are too often given a meretricious appearance on appeal; the perspective of the living trial is lost in the search for error in a dead record."[7]

**6.** *See United States v. Canniff*, 521 F.2d 565, 571–72 (2d Cir. 1975); *United States v. Wilner*, 523 F.2d 68, 73–74 (2d Cir. 1975) ("A prosecuting attorney is not an automaton whose role on summation is limited to parroting facts already before the jury. He is an advocate who is expected to prosecute diligently and vigorously, albeit without appeal to prejudice or passion. His task is not rendered easy by the 'no holds barred' tactics indulged in by all too many defense counsel in recent years"); *United States ex rel. Butler v. Schubin*, 376 F.Supp. 1241, 1249 (S.D.N.Y.1974) ("A reading of the defense summation shows that the prosecutor was justified in his reference in reply"), *aff'd*, 508 F.2d 837 (2d Cir. 1975).

**7.** *Glasser v. United States*, 315 U.S. 60, 88, 62 S.Ct. 457, 473, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting).

Finally, petitioner contends that the trial judge's charge to the jury deprived him of his right to a fair trial. The first element of this claim is that the judge by instructing the jury that it was to determine whether various statements were voluntarily made, "distorted and discredited the defense." The contention is that since the defendant did not put at issue the voluntariness of his spontaneous and other statements, the court's instruction that the jury was to decide whether they were voluntary before they could be considered as evidence of consciousness of guilt minimized the petitioner's defense. The argument is based upon a hypothetical theory advanced by petitioner's trial counsel that petitioner's wife and a babysitter perpetrated the homicide; that the incriminating statements of petitioner in which he acknowledged the killing and the details thereof were made by him to protect his wife as the mother of his children and, therefore, he was entitled to a charge that his statements could be considered as "proof of innocence" as well as consciousness of guilt.

█ First, the trial court, in view of the defendant's plea of not guilty and particularly since the statements were a substantial part of the State's case, was fully justified and, indeed, was required, to charge the jury that the statements could be considered as evidence of defendant's guilt only if they found that they were spontaneously uttered or in the instance of his admissions after the *Miranda* warning, were voluntarily made.[8] Next, as to the claim that the court's charge on voluntariness of statements intruded on the defense, it is necessary to put matters in focus. Petitioner's counsel made no opening statement to the jury; petitioner waived that right. He, as also was his right, did not testify. Thus there was no explanation by him or by any person as to why he made the

incriminating statements that he had killed the decedent, and the details of the killing. The record is devoid of a scintilla of evidence to support a plausible argument that the wife, aided by the babysitter, was the killer. The contention that the incriminating statements were made to protect petitioner's wife was sheer rhetoric advanced by petitioner's counsel. The sole basis in the evidence, that even remotely suggests the purpose of the statements was a cover-up for his wife, is that after petitioner's arrest and while at the station house, when his brother asked him what had happened, he responded, "when it's all over I'll tell you. Right now the kids need a mother."[9] This ambiguous statement is a slender reed upon which to contend that the court was duty bound to include in its charge that the petitioner's statements could be considered as proof of innocence. The claim was a matter of argument by his lawyer and the failure of the court to so charge did not violate petitioner's right to a fair trial.

█ Next, the petitioner claims that the court's charge of flight deprived him of a fair trial. The evidence presented by the People was sufficient to support a charge on flight as consciousness of guilt; no contrary evidence was offered. The claim of constitutional error is without substance.

█ Finally, the petitioner contends that when the court in response to the jury request during its deliberations again gave instructions on the difference between murder in the second degree and manslaughter, the failure to "concomitantly recharg[e] on the People's burden of proof and the presumption of innocence" deprived him of a fair trial. However, the trial court was not required in response to the specific request of the jury to again charge them on any other matter.[10] The jury request was pre-

---

**8.** The defendant moved to suppress the statements made to the arresting detective after the *Miranda* warning and a *Huntley* hearing was conducted. The court noted that the People were required to "show the legality of the statements" and concluded they were voluntarily made and, accordingly, denied the motion to suppress. *Huntley* hearing at 53.

**9.** Trial Record at 633.

**10.** *United States v. Velez*, 652 F.2d 258, 262 (2d Cir. 1981) ("a supplemental charge is not defective where it responds adequately to the jury's request for clarification"); *United States v. Viserto*, 596 F.2d 531, 539 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52

cise and the court's instruction in response was in kind.

In sum, neither singly nor in totality did the alleged errors, attributed to the trial judge, deprive the petitioner of his right to a fundamentally fair trial. The petition for a federal writ of habeas corpus is dismissed.

So ordered.

(1979); *Whiting v. United States*, 321 F.2d 72, 75 n.3 (1st Cir. 1963), *cert. denied*, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114 (1963).