**Garnett JOHNSON, Petitioner,**

v.

**Harold J. SMITH, Respondent.**

**No. 82 Civil 1771.**

United States District Court,
S. D. New York.

Sept. 28, 1982.

of the State of New York, Westchester County, by a jury of the crimes of kidnapping, robbery and assault, and a lesser concurrent sentence for robbery and assault,[1] seeks his release upon a federal writ of habeas corpus pursuant to 28 U.S.C., section 2254. He alleges that the judgment of conviction is void for violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution in that (1) his guilt was not established beyond a reasonable doubt; (2) he was denied his right to a speedy trial; and (3) because of trial errors he was deprived of a fundamentally fair trial.

The judgment of conviction was unanimously affirmed without opinion by the Appellate Division, Second Department, and leave to appeal to the Court of Appeals was denied. The State raises no issue as to the exhaustion of remedies.[2]

In broad outline, the prosecution established that four ski masked and armed men gained entrance into the New Rochelle, New York home of James Lofton at 4 a. m. on May 2, 1975, where Mrs. Lofton was asleep with her three young daughters. Her husband was not at home. She and the children were awakened by the barking of their dog. The intruders demanded to know the whereabouts of large sums of money that the husband allegedly had secreted, and when she denied knowledge thereof they threatened "to blow her brains out," slapped her face, pistol-whipped her and terrorized the children. After threats of kidnapping, demands for ransom of $500,000, further threats to kill the children, to cut the throat of one, and after ransacking the house, the robbers bound and gagged Mrs. Lofton and put her in a closet with orders to count to fifty before moving. The events extended over an hour. When Mrs. Lofton freed herself she found that the four men and her youngest daughter Yasmin, 2½ years of age, were gone. She

Garnett Johnson, pro se.

Carl A. Vergari, Dist. Atty., of Westchester County, White Plains, N. Y., for respondent; Lois A. Cullen, Asst. Dist. Atty., White Plains, N. Y., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, now serving a sentence of twenty-five years to life imprisonment following his conviction in the Supreme Court

---

1. Upon completion of these sentences petitioner is to commence service of a 15-year sentence imposed upon him in the United States District Court, Eastern District of New York, for a narcotics violation (21 U.S.C. § 841(a)(1)). In addition, a concurrent 10-year sentence was imposed following his conviction on a plea of guilty to manslaughter entered in the Supreme Court of the State of New York, Queens County.

2. *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

notified the police of the occurrence and that her daughter was missing. A police radio alert was broadcast to all police cars in the vicinity.

The evidence established that the men made a getaway from the home in two cars, a tan Thunderbird and a blue sports Datsun. The Datsun, after a police chase and a crash, was intercepted. Two men, later identified as Skippy Curton and James Taylor, who had run from the car, were apprehended and arrested. Yasmin was found in the car and safely returned to her family. Items stolen from the Lofton home were found in the possession of Curton and Taylor. The occupants of the Thunderbird managed to evade capture. The car itself was not seen again.

Shortly after the arrest of Curton and Taylor, they were jointly tried and convicted upon a nonjury trial for their roles in the robbery and kidnapping and were sentenced.[3] The investigation of the matter and a search for the two men who had escaped in the Thunderbird continued.

Petitioner was not apprehended until 1978. The events leading to his arrest were as follows: In the Datsun documents were found bearing the name of Robert Jones. As a result of certain leads, the police made contact soon after the crime in late May 1975 with Beryl ("Twiggy") King, a girl friend of Jones. She was then living in Las Vegas, Nevada, and in a telephone conversation with an investigating officer the latter ascertained that Twiggy King and Jones had been involved in the Lofton robbery. However, before further contact could be made with her, she left Nevada without disclosing her whereabouts. She was not contacted again until January 1978. She returned to New York in February 1978 when the investigating officer met her in person for the first time.

About a month prior thereto in January 1978, one Norman Alexander furnished additional information which implicated both Robert Jones and Garnett Johnson, the petitioner herein. Based upon the testimony of Twiggy King and Norman Alexander, as well as evidence obtained from the Datsun car, the grand jury returned a joint indictment against petitioner and Jones. The case was tried in March 1979 and the jury returned a verdict finding petitioner and Jones guilty of the crimes already referred to.

■ The petitioner's initial contention that guilt was not established beyond a reasonable doubt is without substance. Applying the standard set forth in *Jackson v. Virginia*,[4] "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," [5] the Court finds there was abundant evidence to sustain the charges against petitioner. The testimony of both King and Alexander and a third witness was entirely adequate to establish guilt beyond a reasonable doubt. King, who testified she "fingered" the Lofton home for the robbery and participated in planning the crime, gave direct testimony of petitioner's role and of his possession and disposition of the proceeds of the crime. Alexander testified that he had known petitioner for fifteen years; that petitioner owned a Thunderbird during the period of the crime (King testified to the same effect) and that shortly after the robbery and kidnapping petitioner described in detail his role and participation therein. Bruce Sandholm, another prosecution witness, also testified as to petitioner's possession of an unusual diamond ring and several other stones allegedly stolen from the Lofton home.

Petitioner's attack upon the credibility of these witnesses does not diminish the force of their testimony. King was held as a matter of law to be an accomplice and Alexander's criminal record was known to the jury as was his expectation that his

---

**3.** Their convictions were affirmed by the Appellate Division and leave to appeal to the Court of Appeals was denied.

**4.** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**5.** *Id.* at 319, 99 S.Ct. at 2789 (emphasis in original).

cooperation in testifying would be made known to appropriate authorities. It was for the jury to pass upon the credibility of these witnesses and by its verdict it is clear that their testimony was acceptable.[6] The trial evidence fully warranted that guilt had been established beyond a reasonable doubt as to the essential elements of each count of the indictment.[7]

The petitioner next contends that he was denied his right to a speedy trial in violation of the speedy trial clause of the Sixth Amendment. The crime was committed on May 2, 1975; petitioner was not indicted until June 22, 1978, more than three years later, but well within the applicable New York statute of limitations.[8] Thus the issue of preindictment delay is one of due process—in this instance whether it was to the prejudice of the petitioner and the reasons for such delay.[9] As already noted, only two of the four assailants of the Lofton family were apprehended soon after the commission of the crime. The other two, one of whom was petitioner, escaped and were for a time fugitives. Moreover, their identities were unknown. The investigation that led to King disclosed some information as to petitioner's involvement in the Lofton crimes. However, this was insufficient to present to a grand jury. Under New York law the testimony of an accomplice by itself is insufficient to sustain a conviction in the absence of corroborative evidence.[10] Thus there was substantial and

good reason for the delay in presenting the matter to the grand jury. Additional and substantial evidence was not obtained from Norman Alexander until January 1978. This evidence, together with other disclosures by Twiggy King when she returned to New York in February 1978, was presented to a grand jury and an indictment returned in June 1978. The prosecution was justified in not presenting the matter to a grand jury until it had sufficient evidence of probable cause that petitioner committed the alleged crimes. Moreover, "prosecutors are under no duty to file charges as soon as probable cause exists," but are required to withhold presenting such charges until "they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt."[11] In addition, and equally significant, the petitioner has not shown in the slightest degree that he was prejudiced by reason of the pre-indictment delay.

Similarly, there has been no showing that his defense was impaired by reason of any post indictment delay.[12] While it is not altogether clear that petitioner makes any contention as to post indictment delay, it is desirable also to put that matter to rest. The indictment was unsealed on August 16, 1978 and at petitioner's request was adjourned to August 28, 1978 for the assignment of counsel. At that time petitioner was incarcerated in the Metropolitan Correctional Center, New York City, upon federal charges and was serving a sentence of

---

6. Cf. Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966). See also Chief Justice Warren's dissenting opinion:
 In performing its duty to prosecute crime the Government must take the witnesses as it finds them. They may be persons of good, bad, or doubtful credibility, but their testimony may be the only way to establish the facts, leaving it to the jury to determine their credibility.
 Id. at 320–21, 87 S.Ct. at 422–23.

7. Petitioner's codefendant Robert Jones also sought a writ of habeas corpus in this court, which in major respects paralleled the claim made herein. That petition was denied by Judge Werker (Jones v. Le Fevre, 81 Civ. 198 (HEW) (S.D.N.Y. Jan. 6, 1982)).

8. New York Penal Law § 160.15 (McKinney 1975) designates robbery in the first degree as a Class B felony, which is governed by a five-

year statute of limitations. N.Y.Crim.Proc.Law § 30.10(2)(b) (McKinney 1981). New York Penal Law § 135.25 (McKinney 1975) designates kidnapping in the first degree as a Class A–1 felony, as to which there is no limitation period. N.Y.Crim.Proc.Law § 30.10(2)(a) (McKinney 1981).

9. United States v. Lovasco, 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977).

10. N.Y.Crim.Proc.Law § 60.22 (McKinney 1981).

11. United States v. Lovasco, 431 U.S. 783, 791, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977).

12. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

imprisonment at a state institution, Attica Correctional Facility upon a state conviction. Following the entry of his plea of not guilty, the case was adjourned for pretrial motions and later marked ready for trial by prosecution and defense on October 23, 1978. It appears that counsel for petitioner's codefendant Jones was not available the first three weeks of February 1979 due to military duty. No application was made by petitioner for a severance. The case proceeded to trial on March 2, 1979. Clearly under all the circumstances the case moved with reasonable dispatch. But more important, in this instance, too, there has been no showing that petitioner has been prejudiced in any respect or that his defense had been impaired.

 Finally, petitioner contends that several trial errors cumulatively deprived him of his right to due process of law and to a fair trial. These include the refusal of the trial court to charge a lesser degree of kidnapping than in the first degree, charging that the relator was an accomplice of the two men who had previously been convicted without clarifying the matter and that the court's marshalling of the evidence was prejudicially unfair. These are all matters of state law. The evidence did not require the submission of the lesser included offense to the jury. The People presented proof of every element of the charges upon which he was convicted. None of the alleged errors, assuming arguendo they are in fact errors, is of substance and neither singly nor in totality were of such an egregious nature so that they deprived petitioner of his right to a fundamentally fair trial.[13] He was entitled to a fair trial, not a perfect trial.[14]

The petition for a writ of habeas corpus is denied.

---

13. Cf. United States ex rel. Birch v. Fay, 190 F.Supp. 105 (S.D.N.Y.1961).

14. Brown v. United States, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570–71, 36 L.Ed.2d 208

(1973) (quoting Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)); Grant v. Dalsheim, 535 F.Supp. 1382, 1385 (S.D.N.Y.1982).