**UNITED STATES of America, Appellee,**

v.

**Lucy VELEZ, Appellant.**

**No. 1229, Docket 80–1429.**

United States Court of Appeals, Second Circuit.

Argued June 1, 1981.

Decided June 18, 1981.

John Latella, Asst. U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Jesse Berman, New York City, for appellant.

Before KAUFMAN and NEWMAN, Circuit Judges, and GAGLIARDI, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

Although the jury ordinarily finds the facts and applies the law, the trial judge, in delivering his charge, bears the weighty responsibility of untangling the skein of legal principles. Thus, we must be sensitive to prejudicial errors in the court's instructions, lest the jury's verdict become the product of caprice rather than a true application of law to fact. In this case, we hold that the district judge's failure in his supplemental instructions to recharge the jury on willful membership in the conspiracy as an element of that offense requires reversal of appellant's conviction.

I.

The testimony at trial revealed that on June 18, 1980, Officer Thomas Iacullo of the United States Customs Patrol observed appellant's co-defendant, Iris Rivera, as she collected her luggage at New York's Kennedy International Airport after arriving from Buenos Aires, Argentina. Rivera appeared nervous and confused and was wearing a flared skirt and jacket of the type often worn by couriers attempting to smuggle narcotics into the United States. After completing the first stage of the customs

* Of the United States District Court for the Southern District of New York, sitting by designation.

inspection, Rivera consented to a "pat down" search conducted by Customs Patrol Officer Maria Sullivan. Officer Sullivan discovered that Rivera's skirt and girdle had concealed two plastic packages containing about a kilogram of cocaine.

Rivera received her *Miranda* rights and agreed to speak at some length to agents of the Drug Enforcement Agency ("DEA") and to cooperate in their investigation of the smuggling operation. She related to them that she had gone to Argentina to retrieve cocaine at the behest of two Hispanic women, Wanda Medero and Lucy Velez. At DEA Agent James Castillo's request, Rivera placed two recorded telephone calls to Medero and Velez, who were at Medero's Bronx apartment, asking them to meet her at the airport. Velez refused, however, and instructed Rivera to join them at the apartment.

Rivera agreed to deliver to the apartment a substitute package prepared by the DEA and containing lactose and a small amount of cocaine. Castillo, posing as a taxicab driver, drove her to the apartment. Velez and Medero met Rivera and accompanied her into the bedroom, where the package was placed under the mattress of the bed. Shortly thereafter, the DEA agents arrived and arrested the three women. After being advised of her *Miranda* rights, Velez agreed to talk to the agents and advised them that she did not know anything about the cocaine or its delivery. She maintained that she had just been visiting her friend Medero. Velez later agreed to listen to the two tape-recorded telephone conversations and identified her own voice and those of Rivera and Medero.

The following day, a grand jury returned a three-count indictment. The first count charged Velez, Rivera, and Medero with conspiracy to import and to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 963. The remaining two counts charged substantive offenses,

alleging that the defendants had knowingly imported the drug, in violation of 21 U.S.C. § 952(a), and that they had possessed cocaine with intent to distribute it, in contravention of 21 U.S.C. § 841(a)(1). Defendants moved to suppress the statements they had made to the DEA agents and the two packages of cocaine seized from Rivera at the airport. Judge Bramwell denied these motions after a hearing. Rivera and Medero then pleaded guilty to the conspiracy count, and the other two counts were dismissed as to them.[1]

Velez elected to go to trial, which was held in September, 1980. Rivera, who testified as the Government's chief witness, asserted that Velez had induced her to smuggle cocaine into the United States. On cross-examination, defense counsel sought to undermine Rivera's credibility by showing that she could not remember the name of her attorney or the count to which she had pleaded guilty. He drew from her an admission that, despite her initial denial, a woman named Snoopy may well have been involved in the importation scheme. Counsel also developed an inconsistency between her post-arrest statement to the DEA agents, in which she said Medero had supplied her plane ticket and expense money, and her testimony at trial, in which she said the ticket and money had been provided by Velez.

The Government's case was presented in two days. Although Velez produced no witnesses, she asked the court to charge the jury on her theory of the case: that Rivera was not truthful or reliable, and that she was motivated by her plea arrangement with the Government and by her desire to protect Snoopy and her niece.[2] Velez also requested an instruction as to her claim that she acted as friend and not as co-conspirator in directing Rivera to Medero's apartment in the Bronx. The judge denied these requests.

---

1. Rivera was placed on probation for five years, and Medero was sentenced to treatment and supervision pursuant to the Federal Youth Corrections Act.

2. Rivera admitted that her niece had accompanied her to the airport the night she left for Argentina.

On the second day of deliberations, the jury asked the court for supplemental instructions concerning "clarification" of all the counts.[3] Judge Bramwell chose to respond to this inquiry by briefly recapitulating the essential elements of each offense. However, although his original instructions stated that willful membership in the conspiracy is an essential element of that offense, in his supplemental charge he failed to repeat this important instruction. Defense counsel immediately objected to this omission and requested a charge on willful membership. The judge refused.[4]

The jury convicted appellant of the conspiracy charge and acquitted her of the substantive counts. She was sentenced to imprisonment for a period of six years.

## II.

■ We turn to an examination of the legal issues raised on this appeal. Appellant's principal argument[5] is that the trial judge erred in refusing to repeat the charge on willful membership in a conspiracy when he responded to the jury's request for supplemental instructions. Willful membership was a crucial element of the Government's case, see *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980), and the trial court's omission, coming as it did after one and a half days of jury deliberations, was bound to have a substantial impact on the jurors.

■ It is true that the legal sufficiency of the supplemental charge must be assessed in the context of the instructions as a whole, *United States v. Park*, 421 U.S. 658, 674–75, 95 S.Ct. 1903, 1912–1913, 44 L.Ed.2d 489 (1975); *United States v. Valencia*, 645 F.2d 1158 at 1166 (2d Cir., 1980, *as amended*, March 5, 1981); *United States v. Sears*, 544 F.2d 585, 588 (2d Cir. 1976). The omission of an original instruction in the supplemental charge is usually not erroneous where the trial judge explicitly cautions the

---

3. The jury's request read: "Please read the Judge's charge on the following points. Clarification on all the counts. How does [*sic*] Counts Two and Three differ from Count One?" Count One of the Indictment charged Velez with conspiring to import and possess cocaine. Count Two charged her with importing cocaine, and Count Three with possessing the drug.

4. Excerpts of the colloquy between the court and defense counsel follow:

MR. BERMAN: Judge, I want to take exception at this point ... [T]o outline conspiracy Count One without saying anything about membership in the conspiracy, unquestionably on the evidence here there was a conspiracy and the only issue for the jury is whether this defendant was a member of the conspiracy.

You left out in the conspiracy—in this recharge—

THE COURT: Listen, I left out a good portion of the Charge.

MR. BERMAN: Yes. But I am saying that the—

THE COURT: I could have went [*sic*] over the whole Charge. Why don't you say that and say that's what I should have done.

MR. BERMAN: No. The effect of what you chose to leave out—you left out in Count One the part that most helps my client.

THE COURT: I have done it. Why don't you argue that when you take—

MR. BERMAN: I just want to make my record.

THE COURT: That you keep talking. Why don't you argue that when you are taking the appeal.

. . . . .

MR. BERMAN: I have to try to explain to you why this is specifically harmful to my client. . . . [W]hat you did is to leave out the membership element of the conspiracy . . .

THE COURT: You said that three times. Don't you know I heard you.

5. Appellant also argues that the district court erred (1) in refusing to charge appellant's theory of the case; (2) in improperly conducting itself during the proceedings below, thereby depriving appellant of a fair trial; (3) in receiving into evidence English transcriptions of telephone conversations recorded in Spanish; and (4) in sentencing appellant. In view of our holding, it is not necessary to reach these other issues. We note, *en passant*, that the court did not charge the jury, as requested by defense counsel, that the credibility of the principal Government witness, Iris Rivera, should be considered with care. Since the alleged lack of credibility of this witness constituted a large and important part of appellant's defense, perhaps it would have been wise for Judge Bramwell to have given the requested instruction. *See United States v. Alfonso-Perez*, 535 F.2d 1362, 1365 (2d Cir. 1976). In any event, since defense counsel forcefully argued Rivera's lack of credibility in his summation, Judge Bramwell's omission was not prejudicial. *See id.*

jury that the supplemental instruction is an adjunct to, and not a substitute for, the original charge. *See Valencia, supra,* at 1166. Moreover, a supplemental charge is not defective where it responds adequately to the jury's request for clarification. *United States v. Viserto,* 596 F.2d 531, 539 (2d Cir.), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). Finally, even if some error can be found in the supplemental charge, it will not ordinarily require reversal where there is no evidence that the defendant was prejudiced by it, *United States v. Gleason,* 616 F.2d 2, 21 (2d Cir. 1979), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980), or where a subsequent supplemental instruction cures the defect, *Valencia, supra,* at 1166.

■ Although reluctant to upset a conviction because of an error in the supplemental charge, we are constrained to reverse here because the trial court's failure to recharge the jury on the willful membership element was both erroneous and highly prejudicial. Velez's only defense was that she was not a knowing participant in the smuggling scheme. Defense counsel argued that she acted out of friendship, not as a willful member of the criminal enterprise, in giving Rivera directions to Medero's apartment. Clearly, the element of willful membership was crucial to appellant's case. Moreover, the jury's note manifested its difficulties in comprehending the elements of the conspiracy offense. It was thus incumbent upon the trial court to "clear them away with concrete accuracy." *Bollenbach v. United States,* 326 U.S. 607, 612–613, 66 S.Ct. 402, 405, 90 L.Ed. 305 (1946). But here the district judge, over defense counsel's insistent objections, merely repeated what he several times described to the jury as the "essential elements" of conspiracy, without informing them of the need to find willful membership. The judge, by his persistent refusal to recharge an "essential" element at this late stage in the jury's deliberations, could well have given the impression that willful membership was not an essential element, when in fact it represented the one legal requirement Velez strenuously argued the Government had not

proved. *See United States v. De la Torre,* 605 F.2d 154, 156 (5th Cir. 1979) (willful membership element "crucial to a comprehension" of a conspiracy charge, and omission of element on recharge not harmless).

Not only was the supplemental charge erroneous, but the trial court's refusal to give a supplemental instruction on this essential element prejudiced the defense. In analogous situations, other Circuits have held that, if a jury requests clarification of the counts alleged in the indictment, a court's failure to charge on the requisite *mens rea* constituted reversible error. *See, e. g., United States v. Bolden,* 514 F.2d 1301, 1309 (D.C.Cir.1975) (in felony murder case court failed to charge in supplemental instructions that intent to rob must be formed before the homicide); *Bland v. United States,* 299 F.2d 105, 108 (5th Cir. 1962) (failure to recharge on element of guilty knowledge held reversible error). Indeed, the erroneous supplemental instructions in the instant case, given after a day and a half of jury deliberations, were perhaps more prejudicial than those in *Bolden* and *Bland,* since in those cases the juries had been deliberating for only an hour and a half and for four hours, respectively. After a day and a half of deliberations, Judge Bramwell's original instructions on willful membership may well have been but a faint memory in the jurors' minds, if indeed this important principle in the complex area of conspiracy law was recalled at all. In any event, any vague recollections would certainly have been overshadowed by the judge's rendition of the "essential elements" of conspiracy in the supplemental charge. Moreover, the district judge neither cautioned the jury that the supplemental charge should be assessed in light of his original instructions, *see Valencia, supra,* nor did he correct his omission with a later set of supplemental instructions, when promptly requested to do so, *see id.*

Accordingly, we reverse the judgment of conviction and remand the case for a new trial.