USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-2000 BRUCE ANDERSON, Petitioner, Appellant, v. NORMAN J. BUTLER, Respondent, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] ___________________ _________________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ _________________________ Stephen Hrones, with whom Hrones & Garrity was on brief, for ______________ ________________ appellant. Nancy W. Geary, Assistant Attorney General, with whom Scott ______________ _____ Harshbarger, Attorney General, was on brief, for appellee. ___________ _________________________ May 11, 1994 _________________________ SELYA, Circuit Judge. Petitioner-appellant Bruce SELYA, Circuit Judge. ______________ Anderson, convicted of first degree murder in the stabbing death of his estranged wife, exhausted state remedies and then applied to the federal court for a writ of habeas corpus, alleging ineffective assistance of counsel. Ultimately, we granted the writ in a 2-to-1 decision, see Anderson v. Butler, 858 F.2d 16 ___ ________ ______ (1st Cir. 1988), and ordered a new trial, id. at 19. Petitioner ___ fared no better the second time around: a Massachusetts superior court jury convicted him of first degree murder and the highest state court again proved inhospitable, see Commonwealth v. ___ ____________ Anderson, 408 Mass. 803, 563 N.E.2d 1353 (1990). ________ Having succeeded once in obtaining habeas relief under federal law, see 28 U.S.C. 2241-2254, petitioner tried anew. ___ This time he contended that a jury instruction on the issue of provocation created an impermissible mandatory presumption. See ___ generally Sandstrom v. Montana, 442 U.S. 510, 520-24 (1979) _________ _________ _______ (holding that an instruction setting up a presumption, which has the effect of relieving the prosecution of the burden of proof on an element of a charged crime, violates the Due Process Clause). The district court denied and dismissed the petition. See ___ Anderson v. Butler, No. 91-10482-Z (D. Mass. Aug. 23, 1993)("D. ________ ______ Ct. Op."). This appeal followed. I. BACKGROUND I. BACKGROUND The relevant facts are laid out in the Supreme Judicial Court's opinion, see Anderson, 563 N.E.2d at 1354-55, and it ___ ________ would be pleonastic to rehearse them here. It suffices to say 2 that, at the second trial, petitioner conceded the uxoricide, but claimed that he acted without malice and in the heat of passion, having been provoked by finding a strange and scantily clad man in his wife's bedroom. In this appeal, petitioner sounds a single theme, constructed in three stages: he contends that the superior court judge erred in his charge to the jury on the question of provocation; that the error struck at the heart of petitioner's defense, thus denying him a fair trial; and that, consequently, his constitutional rights were abridged. His complaint is directed specifically at a single sentence within the trial judge's lengthy description of provocation.1 That sentence told the jurors to examine whether "an ordinary man, given all the facts and circumstances . . . would he be likely to be in such a state of passion, anger, fear, fright or nervous excitement as would lead him" to commit murder. Petitioner claims that, had the judge faithfully stated the governing law, see Commonwealth ___ ____________ v. Walden, 380 Mass. 724, 405 N.E.2d 939 (1980); Commonwealth v. ______ ____________ Rooney, 365 Mass. 484, 313 N.E.2d 105 (1974), he would have said ______ "might lead" in lieu of "would lead." Both the state supreme court, Anderson, 563 N.E.2d at ________ 1355-56, and the federal district court, D. Ct. Op. at 3-6, carefully examined this assignment of error, placed it into realistic context, and found it wanting. We reach the same ____________________ 1The full text of the charge on provocation is reproduced in Commonwealth v. Anderson, 563 N.E.2d at 1355 n.1. ____________ ________ 3 conclusion. II. DISCUSSION II. DISCUSSION We begin by particularizing the single respect in which the jury instructions on provocation were in error. We then indicate why, upon careful review of the record, we find no sufficient reason to believe that, within the framework of the entire charge, the mangled verb usage would have been understood by a reasonable juror as creating a mandatory presumption. Last, we explain why, regardless of how the solitary instructional error is viewed, it cannot plausibly be said, on the whole record, that the lapse tainted the trial or compromised petitioner's defense. A. The Error. A. The Error. _________ Massachusetts law defines adequate provocation, sufficient to convert what might otherwise be murder into manslaughter, as "something `that would be likely to produce in an ordinary man such a state of passion, anger, fear, fright or nervous excitement as might lead to an intentional homicide and, moreover, such as did actually produce such a state of mind in the slayer.'" Rooney, 313 N.E.2d at 112 (citation omitted). ______ Consequently, the trial judge's instructions, which used the verb phrase "would lead" in place of the phrase "might lead," erred in this one respect.2 B. The Mandatory Presumption. B. The Mandatory Presumption. _________________________ ____________________ 2By petitioner's own admission, the bulk of the court's charge on provocation was squarely in line with applicable principles of Massachusetts law. 4 The Due Process Clause requires the prosecution to prove every essential element of a crime beyond a reasonable doubt. Hence, if a court instructs a trial jury in such a way as to create a mandatory presumption that relieves the government of its burden, the court runs afoul of the Constitution. See ___ Sandstrom, 442 U.S. at 524. _________ In the circumstances of this case, the tripartite test of Hill v. Maloney, 927 F.2d 646 (1990) governs the merits of ____ _______ petitioner's Sandstrom claim. Under Hill, a reviewing court must _________ ____ first determine whether a reasonable juror would have interpreted the challenged portion of the instruction as creating a mandatory presumption. Id. at 648-49. If so, the court must then consider ___ whether other parts of the charge clarified the ill-advised language with the result that a reasonable factfinder would not have understood the instruction to create an unconstitutional presumption. Id. at 649. Finally, if the court determines that ___ the charge as a whole left the jurors with an impermissible impression, the court must proceed to evaluate the harmlessness vel non of the error. Id. at 649, 654. ___ ___ ___ Using Hill v. Maloney as our yardstick, we take the ____ _______ measure of petitioner's case. 1. Nature of the Presumption. First and foremost, we 1. Nature of the Presumption. _________________________ do not believe that a reasonable juror would have viewed the disputed instruction as setting up a mandatory presumption. Petitioner suggests that the substitution of the verb "would" for "might" was tantamount to the judge telling the jurors that, "if 5 you do not find complete self-defense the only circumstance under which an ordinary man "would" kill you must find insufficient provocation and, therefore, malice." And since there was no evidence of self-defense, the thesis runs, the judge effectively directed a finding of malice. Although ingenious, petitioner's thesis is severely flawed. One principal problem with it is that, while a legal theorist perhaps might have reasoned in this way, the judge did not instruct the jury to follow such a course. As we explained in Hill, "[a] mandatory presumption instructs the jury that it ____ must infer an `elemental fact' such as intent or malice from ____ proof of a `basic fact' such as a knowing act." Hill, 927 F.2d ____ at 648. Where, as in this case, the charge merely permits the inference to be drawn, the presumption, by definition, is not mandatory. See, e.g., id. at 649. ___ ____ ___ Judges should not divorce themselves from the reality of human experience. Taking a practical, commonsense approach, we conclude that, in all probability, a typical juror would not have known the appropriate legal standard for perfect self- defense, and, therefore, would not even have considered the possibility that a finding of malice was mandated by the court's instruction. Hence, the erroneous substitution of "would" for "might" in a single sentence of the charge did not forge a mandatory presumption. At most, the ailing instruction, by itself, would have had the effect of lowering the burden placed by state law on the prosecution, not eliminating it. 6 2. The Totality of the Charge. Even assuming, for 2. The Totality of the Charge. ____________________________ argument's sake, that the erroneous substitution of "would" for "might" in the instructions created an impermissible presumption, we deem it highly unlikely that a reasonable juror would have understood the instructions, overall, as directing that malice was to be presumed. If the specific language challenged on appeal creates a mandatory presumption, the court "then must consider whether other parts of the instruction explained `the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.'" Hill, 927 F.2d at 649 (quoting Francis v. ____ _______ Franklin, 471 U.S. 307, 315 (1985)). Of course, in studying this ________ question, an inquiring court must bear in mind that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp ____ v. Naughten, 414 U.S. 141, 146-47 (1973). ________ We believe that petitioner focuses too single-mindedly on the challenged sentence in the abstract. A fair reading of the judge's instructions, taken in their totality, leads inexorably to the conclusion that the court explained the matter with sufficient care that a reasonable juror would not have understood the charge to have created an unconstitutional presumption. We explain briefly. The judge began the relevant segment of the charge by opening the jurors' minds to an expansive definition of 7 provocation. Specifically, he told the jury that, "[t]he law does not attempt to define in any narrow way the provocation which may reduce the crime to manslaughter." He went on to instruct that reasonable provocation "is that kind of provocation that would inflame a reasonable ordinary and law abiding man to the point where he would be capable of killing another person." The judge then stated that, "provocation must be such as would likely produce in an ordinary man such a state of passion, anger, fear, fright or nervous excitement as would eclipse his capacity for reflection or restraint and actually did produce such a state of mind in the defendant." Only at this point did the judge interject the objectionable language.3 Even then, it was promptly followed by further clarification in the form of a question; the judge asked the jury to mull whether "the situation [would] be such that [the ordinary man] would likely be in such a state of passion, anger, fear, fright or nervous excitement as would eclipse his capacity for reflection and restraint?" The judge then proceeded to outline the additional requirements for a finding of voluntary manslaughter, making it plain that a verdict less than murder was an option. Viewed against this backdrop and considering the ____________________ 3To be sure, the jurors heard this portion of the charge not once, but twice, for, during deliberations, they asked to be reinstructed as to the various degrees of homicide, and the judge reread the pertinent portions of the original charge. We do not see how this circumstance bears on the question of whether the interdicted language fosters a mandatory presumption. 8 judge's repeated admonitions that the jury must resolve the provocation issue, we think it is highly improbable that a reasonable juror would have understood, from the entire charge, that the absence of provocation was to be assumed. Thus, even if the challenged sentence, viewed in isolation, carried the potential of creating a mandatory presumption and we do not believe, realistically, that such a potential loomed we consider it extremely unlikely that a reasonable juror, heeding all the instructions, would have taken an unconstitutional tack. ___ 3. Harmlessness. Finally, assuming arguendo that the 3. Harmlessness. ____________ ________ instructional error created a legally impermissible presumption, we would find the error harmless. This court has recently held that, under applicable Supreme Court precedents, an instructional error of the type alleged by petitioner is to be considered trial error, not structural error, for purposes of habeas review. See ___ Libby v. Duval, ___ F.3d ___, ___ (1st Cir. 1994) [No. 93-1588, _____ _____ slip op. at 17-18]; see also Ortiz v. Dubois, ___ F.3d ___, ___ ___ ____ _____ ______ (1st Cir. 1994) [No. 93-1656, slip op. at 17] (dictum). Trial errors even trial errors of constitutional dimension are reviewed in habeas corpus proceedings under the so-called "whole-record" test for harmless error. See Brecht v. ___ ______ Abrahamson, 113 S. Ct. 1710, 1718-19, 1722 (1993). In such __________ circumstances, the writ should issue only if the reviewing court concludes that the instructional error "had a substantial and injurious effect or influence in determining the jury's verdict." Id. at 1714 (quoting Kotteakos v. United States, 328 U.S. 750, ___ _________ _____________ 9 776 (1946)); see also United States v. Ladd, 885 F.2d 954, 957 ___ ____ _____________ ____ (1st Cir. 1989) (explicating Kotteakos "fair assurance" _________ standard). We think the Commonwealth's case passes Kotteakos _________ muster with flying colors. Like the veteran district court judge, we simply do not believe that a one-word deviation from the norm spoiled the trial's overall integrity. To the exact contrary, it seems transpicuous that the judge's charge, taken in _____ __ its entirety, fairly presented the law and adequately limned ___ ________ petitioner's theory of the case. Furthermore, given the strength of the prosecution's case and the weaknesses inherent in his provocation defense,4 it is surpassingly difficult to believe ____________________ 4To give content to our general statements that the evidence against petitioner was strong and that petitioner's defense of provocation was weak, we cite one illustrative, if gruesome, passage from the Supreme Judicial Court opinion: There was evidence that, although the defendant was enraged when he attacked his wife, he nevertheless acted in a calculating, deliberate, and reflective fashion. For example, when he entered his wife's apartment, the defendant made it impossible for her to summon assistance by ripping the telephone from the wall. After the defendant had chased the other man from his wife's apartment, he had to return and force his way into the neighbors' apartment in order to get to his wife. As he stabbed his wife, the defendant told her "You're gonna fuckin' die, bitch." When an occupant of the apartment in which the stabbing occurred attempted to intercede, the defendant held him at bay (and again confirmed his intentions) by saying, "Get outa my fuckin' way or you'll die too." After stabbing his wife several times, the defendant left the apartment . . . . [Thereafter], the defendant decided to return to stab his wife several more times. 10 that so subtle a shading of the charge had any discernible impact on the jury's verdict. We will not paint the lily. The trial judge's slip of the tongue, though regrettable, was not egregious. For the reasons indicated, we deem it highly probable that the single erroneous portion of the instruction had no bearing whatever on the jurors' consideration of petitioner's defense. It follows inexorably that the error was benign under the Kotteakos _________ standard. C. Fundamental Fairness. C. Fundamental Fairness. ____________________ To tie up a loose end, we also consider whether the instructional error, even though it did not create an impermissible Sandstrom-type presumption, justifies the granting _________ of habeas relief. After all, the error, as we have acknowledged, see supra Part II(B)(1), had the potential of easing the ___ _____ Commonwealth's burden in proving malice. Viewed from this perspective, however, petitioner can only prevail on habeas review if the ailing instruction, in and of itself, so tainted the proceedings as to divest the whole trial of its fundamental fairness. See Estelle v. McGuire, 112 S.Ct. 475, 482 (1991); ___ _______ _______ Cupp, 414 U.S. at 147. ____ We need not tarry in conducting this inquiry. For reasons already elucidated, see supra Part II(B)(3), it cannot ___ _____ ____________________ Anderson, 563 N.E.2d at 1357. All in all, "defendant stabbed his ________ wife thirteen times, during which she remained fully conscious . . . ." Id. On this, and other evidence, the jury made a special ___ finding of "extreme atrocity" a finding that strikes us as plainly inconsistent with reducing the charge to manslaughter. 11 fairly be said, on balance, that the instructional error robbed petitioner's trial of fundamental fairness or compromised his main defense in any meaningful regard. Hence, petitioner is not entitled to redress on this theory. III. CONCLUSION III. CONCLUSION We need go no further. For aught that appears, petitioner was fairly tried and justly convicted. Finding no deprivation of due process, we uphold the district court's refusal to grant habeas relief. Affirmed. Affirmed. ________ Dissent follows 12 STAHL, Circuit Judge, dissenting. I agree with the _____________ majority that the bulk of the trial court's charge was unreproachable, and that the crime for which petitioner stands convicted is heinous. Nonetheless, I am of the opinion that the erroneous instruction on provocation had the effect of (1) lowering the Commonwealth's burden of proof on the element of malice; and (2) effectively precluding petitioner's jury from making a finding of malice. And, because I believe that both the due process right to have the prosecution bear the burden of proving all elements of the offense charged, see Sullivan v. Louisiana, 113 S. Ct. 2078, ___ ________ _________ 2080 (1993) (citing Patterson v. New York, 432 U.S. 197, 210 _________ ________ (1977) and Leland v. Oregon, 343 U.S. 790, 795 (1952)), and ______ ______ the Sixth Amendment right to have a jury make all elemental _ ____ determinations, see Sandstrom v. Montana, 442 U.S. 510, 523 ___ _________ _______ (1979) (quoting United States v. United States Gypsum Co., _____________ _________________________ 438 U.S. 422, 435 (1978)), must always be honored, I ______ reluctantly and respectfully dissent. I. I. __ Before explaining the reasons for my dissent, I wish to make two initial points. First, I would not examine the challenged instruction in terms of whether it set up a mandatory presumption (as the majority does); instead, I would view it simply as an instruction misdescribing an element of the offense. Although they possess many of the -13- 13 same characteristics5 and are analyzed similarly, Carella, _______ 491 U.S. at 270 (Scalia, J., concurring in the judgment), mandatory presumptions and elemental misdescriptions are not ___ the same thing. For clarity's sake, I think it important to emphasize this distinction. Second, although it does not affect my analysis, I note that the language cited by the majority as being the correct statement of Massachusetts law on "adequate provocation" (i.e., "something `that would be likely to produce in an ordinary man such a state of passion, anger, fear, fright or nervous excitement as might lead to an _____ ____ intentional homicide . . .'") (quoting Rooney, 313 N.E.2d at ______ 112) (emphasis supplied), itself may be problematic. See ______ ___ infra at 4-5 (explaining that ordinary men are led to commit _____ intentional homicides only in circumstances which completely ____ __________ exonerate them). Instead, the more proper statement of Massachusetts law on adequate provocation is found in the Walden opinion: ______ There must be evidence that would warrant a reasonable doubt that something ____________________ 5. Like mandatory presumptions, elemental misdescriptions can often lower the prosecution's burden of proof. This happens whenever the instructing judge too lightly describes what the government must prove in order to establish the element at issue. And obviously, like mandatory presumptions, elemental misdescriptions tend to invade the jury's fact-finding role. See Carella v. California, 491 ___ _______ __________ U.S. 263, 270-71 (1989) (Scalia, J., concurring in the judgment) (citing Pope v. Illinois, 481 U.S. 497 (1987) and ____ ________ Carpenters v. United States, 330 U.S. 395 (1947)). __________ _____________ -14- 14 happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear fright, or nervous excitement as would eclipse his _____ _______ ___ capacity for reflection or restraint and ________ ___ __________ __ _________ that what happened actually did produce such a state of mind in the defendant. Walden, 405 N.E.2d at 944 (emphasis supplied). Accordingly, ______ I will make reference to the Walden language in discussing ______ the law of adequate provocation in this dissent.6 II. II. ___ I turn now to my analysis. In my view, the Commonwealth does not and cannot define "adequate provocation" as provocation that would cause an "ordinary man" to go into such "a state of passion, anger, fear, fright, or nervous excitement as would lead him to an _____ ____ intentional homicide." (Emphasis supplied). As petitioner points out in his brief, circumstances that would lead _____ ordinary people to commit intentional homicides (e.g., circumstances giving rise to claims of self-defense) completely exonerate the killers; circumstances that lead to __________ ____________________ 6. Of course, in the decision challenged by the instant petition, the Supreme Judicial Court, without analysis, stated that both the language from Rooney relied upon by the ______ majority and the instruction at issue here were consistent with the Walden standard and therefore not erroneous. See ______ ___ Anderson, 563 N.E.2d at 1356. While the SJC is the final ________ authority on what constitutes adequate provocation under state law, it is not, where due process and Sixth Amendment concerns are implicated, the final authority on whether the jury likely misconstrued the applicable principle or whether two divergent definitions are, in fact, consistent. See ___ Sandstrom, 442 U.S. at 516-17. _________ -15- 15 manslaughter, however, are only viewed as mitigating felonious conduct. Therefore, the instruction challenged here clearly and unambiguously was erroneous. More importantly, its effect was both to lower the Commonwealth's burden of proof on the element of malice, see Commonwealth v. _______ ___ ____________ Todd, 563 N.E.2d 211, 213-14 (Mass. 1990) (where adequate ____ provocation is properly at issue, the Commonwealth bears the burden of proving its absence in order to prove malice),7 and to preclude the jury from making a meaningful malice finding, see Carella v. California, 491 U.S. 263, 270-71 ___ _______ __________ (1989) (Scalia, J., concurring). This constitutes a federal due process violation. See Sullivan, 113 S. Ct. at 2080-81 ___ ________ (collecting cases). So too does it constitute a violation of the Sixth Amendment's jury-trial guarantee. See id. at 2081. ___ ___ III. III. ____ The fact that federal constitutional error was committed at petitioner's trial does not, of course, mean that he is automatically entitled to a new trial. Rather, as the majority notes, settled Supreme Court and circuit precedent make clear that we next look to whether the instructions as a whole "explain[ed] the infirm language _______ ____________________ 7. Under the instruction given here, the Commonwealth only was required to prove an absence of circumstances that likely "would lead" an ordinary person to commit an intentional _____ ____ homicide. This, of course, is much easier than proving an absence of circumstances that likely "would eclipse" such a person's "capacity for reflection or restraint." Walden, 405 ______ N.E.2d at 944. -16- 16 sufficiently so that there is no reasonable likelihood that the jury believed it must [apply the instruction in a manner not in accordance with applicable law]." Hill, 927 F.2d at ____ 651 (relying upon Franklin, 471 U.S. at 315). However, ________ because a reviewing court must presume that the jury followed the judge's instructions, see Yates v. Evatt, 111 S. Ct. ___ _____ _____ 1884, 1893 (1991), and "`has no way of knowing which of . . . two irreconcilable instructions the jurors applied in reaching their verdict,'" Hill, 917 F.2d at 651 (quoting ____ Franklin, 471 U.S. at 322) (alteration in original), even ________ instructions directly contrary to the erroneous one which themselves correctly state the law are insufficient to fulfill this explanatory function, id. ___ Here, despite the majority's contrary conclusion, I do not think that the charge as a whole can be considered sufficiently explanatory. Although there were correct characterizations of the concept of adequate provocation, nothing even went so far as to contradict, let alone explain, __________ the court's incorrect statement that, in order to be considered a manslayer rather than a murderer, petitioner must have been confronted with circumstances that would have led an "ordinary man" to kill intentionally. Moreover, the circumstances attendant to the giving of the challenged instruction were much more likely to have imparted to the jurors the impression that the instruction was a correct -17- 17 statement of the law than that it was a mere slip of the tongue. First, defense counsel, in his closing argument, took pains to raise the issue by correctly arguing that adequate provocation does not mean that an ordinary person, in the same circumstances as petitioner, would have acted as _____ petitioner acted; instead, adequate provocation only means that an ordinary person, in the same circumstances as petitioner, would have had his/her capacity for reflection or reason eclipsed. Second, it is beyond question that defense counsel interposed pointed objections at sidebar both times the ailing instruction was delivered to the jury. In light of these undisputed facts, I simply do not see how we can say that the overall charge explained away the error. IV. IV. ___ Even where the charge as a whole does not explain away the erroneous instruction, an instruction misdescribing an element of an offense can be harmless. In my dissenting opinions in Libby v. Duval, No. 93-1588, slip op. at 21-33 _____ _____ (1st Cir. March 24, 1994) and Ortiz v. Dubois, No. 93-1656, _____ ______ slip op. at 24-27 (1st Cir. March 24, 1994), I explain in detail my view that the whole-record harmless-error review prescribed by Brecht v. Abrahamson, 113 S. Ct. 1710, 1722 ______ __________ (1993), cannot and should not be utilized by courts reviewing instructional errors which have the effect of precluding juries from making requisite factual findings in criminal -18- 18 trials. Rather, as I argue in those opinions, habeas courts reviewing such errors for harmlessness should employ the test set forth in Justice Scalia's concurring opinion in Carella. _______ Because the error here -- misdescription of an element of the offense -- had exactly such an effect, see Carella, 491 U.S. ___ _______ at 268-71 (Scalia, J., concurring), I would review it according to the dictates of the Carella concurrence. That _______ is to say, I would ask (1) whether the erroneous instruction was relevant only to an element of a crime of which petitioner was acquitted; (2) whether the erroneous instruction was relevant only to an element of the offense which petitioner admitted; or (3) whether no rational jury could have found what it actually did find and not also find ________ ___ ____ the misdescribed element. See id. at 271. ___ ___ Here, none of the three prongs of the Carella test _______ is satisfied. Certainly, petitioner neither was acquitted of murder in the first degree nor admitted that he had acted maliciously. Moreover, the record is devoid of factual findings which are the "functional equivalent" (i.e., which are "so closely related to the ultimate fact to be found that no jury could find those facts without also finding th[e] ultimate fact," see id.) of the missing finding: an absence ___ ___ of adequate provocation. The most we can say on this record is that the jury found that an ordinary person, faced with the same circumstances as petitioner, would not have been led -19- 19 to commit an intentional homicide. To me, it is manifest that such a finding is not the functional equivalent of a ___ finding that an ordinary person, faced with the same circumstances as petitioner, would not have had his/her capacity for reflection or restraint eclipsed. Accordingly, the error was not harmless. I therefore would grant the writ. -20- 20