Aaron D. JAMISON, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 99–2217.

United States Court of Appeals,
First Circuit.

Heard Jan. 8, 2001.

Decided March 29, 2001.

Veronica J. White, by appointment of the court, for petitioner.

Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, was on brief for the United States.

Before TORRUELLA, Chief Judge, BOUDIN and LYNCH, Circuit Judges.

BOUDIN, Circuit Judge.

This case involves the "second and successive" language added to the habeas statute by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, §§ 105–06, 110 Stat. 1214, 1220–21 (1996) (codified at 28 U.S.C. §§ 2244, 2255). Aaron Jamison was indicted for possessing, and conspiring to possess, crack cocaine with intent to distribute. 18 U.S.C. § 2 (1988); 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), 846 (1988 & Supp. V 1993). On May 19, 1994, Jamison and a co-defendant were convicted by a jury on both counts. Thereafter, Jamison's trial counsel withdrew and new counsel was appointed to represent Jamison.

On May 19, 1995, the district court sentenced Jamison to 236 months' imprisonment. Because of the quantity of drugs and adjustments upward for leadership of criminal activity, U.S.S.G. § 3B1.1(a) (1994), and for obstruction of justice, U.S.S.G. § 3C1.1, Jamison had an offense level of 34. The district court found that four pertinent prior convictions put Jamison in criminal history category IV. U.S.S.G. § 4A1.1. The resulting guideline range was 210 to 262 months. Thus, the sentence fell in the middle of the guideline

range (and within the basic statutorily prescribed range of between five and forty years, 21 U.S.C. § 841(b)(1)(B)).

Jamison filed a timely appeal but the appeal was later dismissed for want of prosecution; the appeal of his co-defendant was rejected on the merits. *United States v. Martin,* 77 F.3d 460, 1996 WL 73363, at *1 & n. 1 (1st Cir.1996) (unpublished opinion). Thereafter, in 1997, Jamison filed a motion under 28 U.S.C. § 2255 (Supp. II 1996), claiming ineffective assistance of counsel on the basis of both his trial counsel's handling of the trial and his appellate counsel's failure to pursue the appeal.

The district court ultimately denied the section 2255 motion because factual allegations needed to support Jamison's complaints were unsworn, *United States v. LaBonte,* 70 F.3d 1396, 1412–13 (1st Cir. 1995), *rev'd on other grounds,* 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997), and, alternatively with respect to the trial-counsel claims, because those unsworn allegations did not show ineffective assistance at trial, *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, when Jamison sought a certificate of appealability from this court, 28 U.S.C. § 2253(c), this court granted Jamison's request for a certificate but limited it to the alleged failure of his appellate counsel to pursue his original appeal.

In an unreported order dated March 4, 1998, this court ruled on the appeal. The court disregarded the lack of sworn factual allegations on grounds not here relevant; and, on the claim that appellate counsel had been ineffective, the court remanded the case to develop the record as to whether there was an acceptable explanation for the failure of Jamison's attorney to pursue his appeal. On remand, after receipt of an affidavit from Jamison's appellate attorney, the government consented to reinstatement of Jamison's direct appeal.

On review of the reinstated appeal, this court rejected on the merits Jamison's claims relating to the determination of drug quantity. *United States v. Jamison,* 181 F.3d 81, 1999 WL 525942, at *2–*3 (1st Cir.1999) (per curiam) (unpublished opinion). The court declined to address Jamison's further claim that his section 2255 motion had been improperly denied so far as it attacked the competency of his trial counsel. This court said that review of that denial had already been sought, that the court of appeals had limited the certificate of appealability to issues concerning the effectiveness of appellate counsel, and that the claim of ineffectiveness of trial counsel was now foreclosed. *Id.* at *2.

In November 1999, Jamison began the proceeding that is now before us by making a *pro se* request for this court's permission to file a second section 2255 motion. 28 U.S.C. §§ 2244(b)(3), 2255. He claimed that *after* this court affirmed his conviction and sentence on the reinstated direct appeal, one of the New York state convictions that had been used in computing his criminal history was invalidated; he said that, without it, his criminal history category (and guideline range) would have been lower. He did not say that he satisfied the gatekeeping requirements for a second motion, 28 U.S.C. §§ 2244(b)(2), 2255.

After obtaining further information from Jamison, this court appointed counsel and obtained briefing and argument on three questions: whether the motion Jamison sought to file was a second motion, "given that the first petition was used to reinstate a forfeited appeal"; whether the second motion had satisfied the gatekeeping restrictions; and (assuming the merits were reached) whether resentencing was warranted because the state conviction in question should be treated as expunged or invalidated for purposes of the Sentencing Guidelines, U.S.S.G. §§ 4A1.2(j), 4A1.2 notes 6 & 10.

As now amended, sections 2244 and 2255 forbid a district court from entertaining a "second or successive" motion under sec-

tion 2255 without permission from the court of appeals; and to grant permission, the appeals court must find that the motion satisfies one of two gatekeeper requirements: (1) newly discovered evidence that would establish innocence of the offense or (2) a new and previously unavailable rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. 28 U.S.C. §§ 2244(b)(2), 2255. In short, the current habeas statute imposes a one-bite rule with a pair of narrow but important exceptions.

■ Jamison concedes, correctly we think, that the exceptions do not apply. He invokes no new rule of constitutional law, and an attack on the sentence, even if sound, does not show innocence of the crime, see *In re Davenport*, 147 F.3d 605, 609–10 (7th Cir.1998). However, Jamison argues that his motion should not be viewed as a "second" motion because his first one primarily served to reinstate his direct appeal—the trial-counsel claims in his original motion having been denied, Jamison argues, on "technical" grounds. Further, Jamison points out that his claim of error as to criminal history could not even have been presented in the original section 2255 motion because the New York indictment at issue was not dismissed until June 3, 1999, and the case itself not sealed until September 15, 1999.

The first argument is foreclosed by a combination of fairly recent First Circuit precedent and the fact that Jamison's original trial-counsel claims were in fact not rejected on purely technical grounds. In *Pratt v. United States*, 129 F.3d 54, 60–63 (1st Cir.1997), *cert. denied*, 523 U.S. 1123, 118 S.Ct. 1807, 140 L.Ed.2d 945 (1998), we considered and rejected a similar claim that a first motion should not "count" where it served merely to reinstate a direct appeal. Since then, the Supreme

Court decided in *Stewart v. Martinez–Villareal*, 523 U.S. 637, 643–45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), largely on policy grounds, to treat what was formally a second motion as if it were a first motion.

However, in *Stewart*, which was a capital case, an original claim of incompetency to be executed had been dismissed on "technical procedural grounds" (prematurity). *Stewart*, 523 U.S. at 643–45, 118 S.Ct. 1618. *Pratt* explicitly anticipated such a ruling and distinguished the case. 129 F.3d at 60. In this case, despite Jamison's statements to the contrary, Jamison's original claims as to counsel's ineffective assistance at trial were rejected *on the merits;* [1] and, of course, after our remand the district court reinstated the direct appeal and thereby granted relief *on the merits* for Jamison's claim as to counsel's failure to pursue the appeal.

Where a first motion is used to reinstate a direct appeal, reinstatement is unquestionably a grant of collateral relief on the merits and any later motion attacking the same conviction and sentence is, in ordinary usage, a second or successive motion. To discard Congress's literal language regarding the treatment of such motions is a step to be taken with great caution, especially where (as here) a strict reading accords with Congress's aim to restrict collateral attacks, see *Sustache–Rivera v. United States*, 221 F.3d 8, 13 (1st Cir. 2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1364, —— L.Ed.2d —— (2001) (No. 00–6740). Still, as *Stewart* and prior habeas decisions teach, see, e.g., *McCleskey v. Zant*, 499 U.S. 467, 483–84, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), literal language is not everything, and some fine tuning may avoid unfairness without compromising Congress's basic aim.

---

1. The district court adopted in full the magistrate judge's reasoning, and the magistrate judge had found, based on the substance of Jamison's arguments, that Jamison's trial-counsel claims should be dismissed (without an evidentiary hearing)—whether those claims were considered without the unsworn (and therefore technically flawed) factual allegations *or* with them, see *LaBonte*, 70 F.3d at 1413.

Where an original motion reinstated a direct appeal, three circuits have held that such a motion should not count as a "first" motion, one over a strong dissent. *In re Goddard,* 170 F.3d 435, 438 (4th Cir.1999) (divided panel); *Shepeck v. United States,* 150 F.3d 800, 801 (7th Cir.1998) (per curiam); *United States v. Scott,* 124 F.3d 1328, 1330 (10th Cir.1997) (per curiam). Meanwhile, if *Pratt* is counted, two circuits have declined to follow such an automatic rule. *United States v. Orozco–Ramirez,* 211 F.3d 862, 870 (5th Cir.2000); *Pratt,* 129 F.3d at 60–63.

There are policy arguments both ways, and the key problem is a complex one: where the original motion seeks to reinstate a direct appeal and also makes other substantial claims cognizable on habeas, there is arguably a risk that the natural priority likely to be given to the reinstatement claim could lead the courts to give short shrift to, or otherwise prejudice treatment of, the remaining claims. Just how real the threat may be is a matter of reasonable dispute, as the Fourth Circuit's opinions in *Goddard* make clear, *compare Goddard,* 170 F.3d at 437–38 & n. 9, *with id.* at 441 (Wilkins, J., dissenting); but one solution is "not to count" the first motion.

To embrace such a rule, the panel would have to revisit *Pratt,* assuming that this could be done (on account of *Stewart*) without the approval of the en banc court, *cf. Trailer Marine Transport Corp. v. Rivera Vazquez,* 977 F.2d 1, 9 n. 5 (1st Cir.1992). This is the wrong case for us to consider doing so. The claim that Jamison now seeks to present is not one that was compromised, or could have been compromised, by being included along with his habeas claim to reinstate his direct appeal. On the contrary, the present claim that the criminal history determination was "wrong" did not even exist until after the reinstated appeal and is based upon later events.

▇ This brings us to Jamison's second point: that he could not have included in his first motion his present attack on his

sentence because the New York conviction in question was not set aside until 1999, after both his direct appeal and his original motion were resolved. At first blush this looks like a much better reason for carving out an exception to the second motion rule, subject always to the assumption that Jamison moved diligently to undo the New York conviction. *Cf.* 28 U.S.C. § 2255 ("due diligence" trigger for a one-year limitations period). First impressions, however, are deceiving.

From the structure of the habeas amendments, it is clear that Congress understood that cases might arise where, through no fault of the defendant, a ground for collateral attack was unavailable at the time of the first motion. *See Sustache–Rivera,* 221 F.3d at 13–14. Congress therefore created a pair of exceptions, categories where it wanted to preserve collateral relief even after the first motion, for just such situations—the most compelling being new evidence establishing innocence of the offense. 28 U.S.C. §§ 2244(b)(2), 2255. It is implicit in this scheme that collateral attack claims not within the two categories are *meant* to be barred. *See, e.g., In re Page,* 170 F.3d 659, 662 (7th Cir.1999), *cert. denied,* 528 U.S. 1162, 120 S.Ct. 1177, 145 L.Ed.2d 1085 (2000).

This may seem hardhearted, or an inevitable counter-reaction to perceived abuses of the habeas process, or both; but it was clearly deliberate on Congress's part and—absent any constitutional attack—binding on the courts. Happily, in this case the restriction does not even remotely threaten a miscarriage of justice—a further reason why we have no interest in reexamining *Pratt* here. It is worth spelling out the reasons for this conclusion which depend upon facts not yet described.

The New York conviction in question, as described by the pre-sentence report, occurred because in 1991 Jamison was arrested for selling cocaine, probably crack, and was found to possess 73 more bags of

a cocaine-containing substance. Although charged with felony possession, Jamison made a deal with the prosecutor under which he pled guilty to a reduced misdemeanor charge in September 1993. Having been released pending sentencing, Jamison then fled. A bench warrant issued, and Jamison was arrested on that warrant in January 1994. Later that month, Jamison was arrested on the aforementioned federal charges.

This is where matters stood when, following the federal conviction now at issue, Jamison's criminal history was computed for sentencing in the federal case. Because Jamison had been convicted for the 1991 offense on his plea of guilty, that New York conviction contributed one point toward his criminal history, even though he had not yet been sentenced for that offense. U.S.S.G. § 4A1.2(a)(3)-(4). Added to criminal history points from other uncontested convictions, this point moved Jamison from criminal history category III to criminal history category IV.

What then appears to have happened—Jamison's own brief is suggestively guarded in its recitation—is that in 1995, more than one year before his first motion, Jamison requested information regarding the New York warrant. In January of 1998, he moved for the New York Supreme Court to return him for sentencing. Finally, in January of 1999, Jamison moved for withdrawal of his guilty plea and dismissal of his indictment. In due course, in June of 1999, Jamison procured dismissal of the state indictment on the ground that he had not been sentenced in a timely fashion. In September, the New York case was sealed.

Whether the state conviction would have counted if all this had occurred *before* the federal sentence is open to dispute. It depends on a reading of the guidelines, which treat some post-conviction events as precluding inclusion in criminal history (*e.g.*, a reversal on appeal) and others as irrelevant (*e.g.*, a pardon unrelated to innocence), U.S.S.G. § 4A1.2 notes 6 & 10, and possibly on an adaptation of the guidelines to circumstances not explicitly provided for.

However this technical question might be resolved, nothing in the circumstances remotely suggests that there was any injustice in counting the New York conviction toward Jamison's criminal history. Jamison does not dispute, and so far as we know has never disputed, his commission of the crime, and he was convicted on a plea of guilty based (as revealed by the pre-sentence report) on ample evidence. The opportunity to get the case dismissed in 1999 (for delay in sentencing) arose only because, instead of returning for sentencing in November 1993, as he had been ordered to do, he *fled* and thereby initiated a series of delays in his sentencing. Under these circumstances, counting the New York conviction is not even remotely an injustice.

The application for permission to file a second motion is *denied*.