# United States Court of Appeals
## For the First Circuit

No. 23-1533

BRUCE ANDERSON,

Petitioner, Appellant,

v.

MATTHEW DIVRIS,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Gelpí, Kayatta, and Aframe,
Circuit Judges.

Daniel N. Marx, with whom Fick & Marx LLP was on brief, for appellant.

Andre A. Janiszewski, Assistant Attorney General of Massachusetts, with whom Andrea Joy Campbell, Attorney General of Massachusetts, was on brief, for appellee.

May 28, 2025

**AFRAME, Circuit Judge**.  The primary question presented by this appeal is whether a federal habeas corpus petition is "a second or successive habeas corpus application," as the term is used in title 28, section 2244(b)(2), where the petitioner (1) was represented by the same lawyer at trial, on direct appeal, and during the litigation of a first federal habeas petition, and (2) alleges in the subsequent petition that the lawyer provided constitutionally ineffective assistance.[1]  We conclude that such a subsequent petition is "second or successive."  28 U.S.C. § 2244(b)(2).

## I.

In 1983, petitioner Bruce Anderson killed his estranged wife after finding another man in her bedroom.  A Massachusetts jury convicted Anderson of first-degree murder in 1989, and he was sentenced to life in prison without parole.[2]  After an unsuccessful appeal to the Massachusetts Supreme Judicial Court, see Commonwealth v. Anderson, 563 N.E.2d 1353 (Mass. 1990), Anderson petitioned the United States District Court for the District of Massachusetts for a writ of habeas corpus under title 28, section

---

[1]    Following Supreme Court practice, we use the terms habeas "application" and "petition" interchangeably.  Magwood v. Patterson, 561 U.S. 320, 324 n.1 (2010).

[2]    This was the second time that Anderson had been convicted of his wife's murder.  We set aside the first conviction on collateral review.  See Anderson v. Butler, 858 F.2d 16, 19 (1st Cir. 1988).

2254, claiming that the trial judge had improperly instructed the jury on his provocation defense. The district court denied Anderson's petition, Anderson v. Butler, No. 91-cv-10482, 1993 WL 350172 (D. Mass. Aug. 23, 1993); we affirmed, Anderson v. Butler, 23 F.3d 593 (1st Cir. 1994); and the United States Supreme Court denied certiorari, Anderson v. Butler, 513 U.S. 934 (1994).

In 2019, Anderson filed a second habeas petition under section 2254, this time claiming that Attorney Stephen Hrones, the lawyer who represented him in all of the above-referenced proceedings, had been ineffective (1) as trial counsel, for failing to object to certain statements made by the prosecutor during closing argument, and (2) as appellate counsel, for failing to appeal the admission of certain blood evidence as irrelevant and prejudicial. The superintendent of the facility where Anderson is incarcerated (the "Superintendent") moved to dismiss Anderson's petition. The district court granted the motion without prejudice on the ground that the petition was "a second or successive habeas corpus application" that had not been authorized for consideration by this Court. See 28 U.S.C. § 2244(b)(2), (3)(A).

Anderson did not appeal the dismissal but instead applied to this Court for an order authorizing the district court to consider his petition. See 28 U.S.C. § 2244(b)(3). Because the claims in Anderson's petition did not fall within either exception to section 2244(b)(2)'s bar on claims asserted in "second

- 3 -

or successive habeas corpus application[s]," we declined to issue the requested authorization. See id. § 2244(b)(2)(A)-(B), (3). We noted, however, that there was "at least some question" on whether Anderson's petition constituted "a second or successive habeas corpus application" at all. Id. § 2244(b)(2). If the petition were not "second or successive," this Court's authorization would not be required for the district court to consider it. See id. § 2244(b)(3).

We transferred Anderson's application to the district court to consider in the first instance whether the petition was "second or successive." 28 U.S.C. § 2244(b)(2). The court held that it was, denied the petition, and issued a certificate of appealability. See id. § 2253; Fed. R. App. P. 22(b). Anderson timely appealed, and we have appellate jurisdiction. See 28 U.S.C. §§ 1291, 2253.

## II.

We turn to whether Anderson's petition is "a second or successive habeas corpus application" under title 28, section 2244(b)(2). Subsection (b)(2), as added to section 2244 by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that:

> A claim presented in a second or successive
> habeas corpus application under section 2254
> that was not presented in a prior application
> shall be dismissed unless --

- 4 -

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). As just noted, when Anderson's petition was previously before us, we held that it fell within neither of section 2244(b)(2)'s exceptions; consequently, if the petition is "second or successive," Anderson's habeas claims must be dismissed. Id.

Anderson maintains that his present petition is not "a second or successive habeas corpus application." 28 U.S.C. § 2244(b)(2). He argues that he did not have a "meaningful opportunity" to assert ineffective assistance claims regarding Attorney Hrones's performance at trial and on direct appeal during his first habeas proceeding because Attorney Hrones also represented him during that proceeding and could not have been expected to challenge his own effectiveness. Anderson contends that, because a meaningful opportunity to challenge a criminal judgment is the core principle of federal habeas review, his second

petition should not be considered a "second or successive habeas application." Id. That is so, Anderson says, because treating it as such would prevent him from litigating his ineffective assistance claims.

If the phrase "second or successive habeas corpus application" "referr[ed] to all [section] 2254 applications filed second or successively in time," Panetti v. Quarterman, 551 U.S. 930, 944 (2007), the question presented here would be simple. Anderson filed the present habeas application long after he filed his first application in 1991, and, as a matter of chronology, this application is plainly second or successive.

The question, however, is not so simple because "[c]hronology here is by no means all." Banister v. Davis, 590 U.S. 504, 512 (2020). "[S]econd or successive habeas corpus application" is a "term of art," Slack v. McDaniel, 529 U.S. 473, 486 (2000), that does not encompass every "literally second or successive" section 2254 petition, Sustache-Rivera v. United States, 221 F.3d 8, 12 (1st Cir. 2000); see Panetti, 551 U.S. at 944. Thus, the fact that Anderson's present petition is not his first in time does not necessarily mean that it is "second or successive" for purposes of section 2244(b)(2). See Banister, 590 U.S. at 511-12 ("['Second or successive'] does not simply refer to all habeas filings made second or successively in time, following

an initial application." (internal quotation marks omitted) (quoting Magwood, 561 U.S. at 332)).

The Supreme Court has identified two situations in which a later-filed section 2254 petition challenging the same judgment as an earlier petition is not "a second or successive habeas corpus application."[3] 28 U.S.C. § 2244(b). The first is where the earlier petition was dismissed for non-merits reasons such as the petitioner's "failure to exhaust state remedies." Slack, 529 U.S. at 478. The earlier petition in that circumstance is treated "as though it had not been filed, subject to whatever conditions the court attache[d] to the dismissal," and the later-filed petition is treated as the first petition for purposes of section 2244(b). Id. at 487-88.

The second situation is where the later-filed petition presents a newly ripened claim under Ford v. Wainwright, 477 U.S. 399 (1986), that the petitioner is not competent to be executed. See Stewart v. Martinez-Villareal, 523 U.S. 637, 643-45 (1998); Panetti, 551 U.S at 942-47. In Stewart, the Supreme Court concluded that a later-filed petition asserting a Ford claim was not "second or successive" where the petitioner had asserted a Ford claim in his first petition, but the claim had been dismissed

---

[3] A subsequent section 2254 petition that challenges a new or different judgment is also not "second or successive." See Magwood, 561 U.S. at 332-33.

- 7 -

as unripe. See Stewart, 523 U.S. at 643. Subsequently, in Panetti, the Court declined to treat a later-filed petition raising a newly ripened Ford claim as "second or successive" even though the petitioner had not raised a Ford claim in his first petition. See Panetti, 551 U.S. at 942-47. To require a petitioner to raise an unripe Ford claim in a first petition, the Court explained, would be to insist on "[a]n empty formality." Id. at 946. And, the Court concluded that reading section 2244(b)(2)'s limitation on second or successive habeas applications "in a manner that would require unripe (and, often, factually unsupported) claims to be raised [in a first petition] as a mere formality, to the benefit of no party," would run contrary to the statute's purposes. Id. at 946-47.

Anderson's first petition was decided on the merits, and his present petition does not assert a Ford claim. The Superintendent contends that this means Anderson's petition is "second or successive" and submits that we should terminate our analysis here.[4] But the Supreme Court has not suggested that Slack, Stewart, Panetti, and Magwood represent the only

---

[4] The Superintendent also argues that Anderson is collaterally estopped from arguing that his petition is not "second or successive" because the issue was previously resolved against him and, rather than appeal, Anderson sought authorization from this Court to file a "second or successive" petition. Given our disposition in favor of the Superintendent for other reasons, we do not address this argument.

circumstances in which a later-filed section 2254 petition will be exempted from section 2244(b)(2)'s restrictions. See Banister, 590 U.S. at 512-13. Rather, the Court has instructed that, to determine what petitions "qualif[y] as second or successive," we "look[] for guidance in two main places." Id. at 512. The first is "historical habeas doctrine and practice." Id.; see Panetti, 551 U.S. at 943-44 ("'[S]econd or successive' . . . takes its full meaning from our case law . . . ." (quoting 28 U.S.C. § 2244(b))). The other is the purposes of the federal habeas statutes, which include the "conserv[ation of] judicial resources, reduc[tion of] piecemeal litigation, and . . . finality [of] state court judgments within a reasonable time." Banister, 590 U.S. at 512 (internal quotation marks omitted) (quoting Panetti, 551 U.S. at 945-46).

As we explain, both guideposts indicate that Anderson's present petition should be treated as "a second or successive habeas corpus application." 28 U.S.C. § 2244(b)(2).

**A.**

We start with whether "historical habeas doctrine and practice" indicates that a petition like Anderson's would have been treated as a second or successive petition pre-AEDPA. Banister, 590 U.S. at 512. Before AEDPA, "the circumstances in which federal courts decline[d] to entertain a claim presented for the first time in a second or subsequent petition for a writ of

- 9 -

habeas corpus" were defined by "[t]he doctrine of abuse of the writ." McCleskey v. Zant, 499 U.S. 467, 470, 477-97 (1991); see generally 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 28.3[c] (7th ed. 2015) (last updated Dec. 2024). Under that doctrine,

> [w]hen a prisoner file[d] a second or subsequent application, the government b[ore] the burden of pleading abuse of the writ. The government satisfie[d] this burden if, with clarity and particularity, it note[d] petitioner's prior writ history, identifie[d] the claims that appear[ed] for the first time, and allege[d] that petitioner ha[d] abused the writ . . . . To excuse [the petitioner's] failure to raise the claim earlier, [the petitioner was required to] show cause for failing to raise it and prejudice therefrom . . . . If [the] petitioner [could not] show cause, the failure to raise the claim in an earlier petition [could] nonetheless be excused if he or she [could] show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

McCleskey, 499 U.S. at 494-95 (emphasis added); see also Sanders v. United States, 373 U.S. 1, 17-18 (1973) (screening petition under a similar two-step framework but applying pre-McCleskey standard for excusing failure to raise a claim in an earlier petition).

As McCleskey's instruction makes clear, "[t]he pre-AEDPA abuse-of-the-writ doctrine required courts to answer two distinct questions." Goodrum v. Busby, 824 F.3d 1188, 1193 (9th Cir. 2016); see McCleskey, 499 U.S. at 494-95. The first was whether "the

- 10 -

petition at issue [was] second or successive."[5]  Goodrum, 824 F.3d at 1193.  If it was, then the court would have to answer a subsequent question: "[S]hould [the petition] be dismissed as an abuse of the writ?"  Id.; see McCleskey, 499 U.S. at 496.  But if the petition was not second or successive, the court would proceed directly to the petition's merits, so long as the petition was not barred for another reason.  See Goodrum, 824 F.3d at 1193.  Identifying a later-filed habeas petition as second or successive was, in other words, the threshold question for determining whether the petition should be screened, and potentially dismissed, for abuse of the writ.

Five years after McCleskey, Congress enacted AEDPA, which effectively replaced the abuse-of-the-writ doctrine with the restrictions now codified at section 2244(b)(2).  See Pub. L. 104-132, § 106(b) (1996); see also Felker v. Turpin, 518 U.S. 651, 664

---

[5]    Prior to AEDPA's enactment, section 2244 used the term "subsequent" petitions, see 28 U.S.C. § 2244(b) (1966), amended by 28 U.S.C. § 2244(b) (1996), whereas Rule 9(b) of the Rules Governing Section 2254 Cases, which provided guidance as to when such "subsequent" petitions could be dismissed without merits consideration, referred to them as "second or successive," see Rule 9(b), Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 (1976), amended by Rule 9, Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 (2004).  The Supreme Court referred to such petitions generally as "second or subsequent" in McCleskey and does not appear to have considered "subsequent" to mean something materially different than "second or successive," or "second or subsequent" something materially different than either of those terms.  See McCleskey, 499 U.S. at 487-92; see also Sanders, 373 U.S. at 15, 17-18 (using "second or successive," "second," and "successive" interchangeably).

(1996) ("[AEDPA] codifie[d] some of the pre-existing limits on successive petitions, and further restrict[ed] the availability of relief to habeas petitioners."). As already explained, section 2244(b) requires the dismissal of "a second or successive habeas corpus application" raising a new claim unless the application falls within one of section 2244(b)(2)'s two exceptions. 28 U.S.C. § 2244(b)(2)(A)-(B). Those exceptions are generally stricter than McCleskey's cause-and-prejudice and fundamental-miscarriage-of-justice standards, compare id., with McCleskey, 499 U.S. at 496, and many second-or-successive petitions that would have survived an abuse-of-the-writ analysis pre-AEDPA are now subject to dismissal under section 2244(b)(2). See Hertz & Liebman, § 28.3[e]. AEDPA's effect, then, was to transform the judge-made and somewhat flexible abuse-of-the-writ doctrine into a rigid statutory scheme "meant to . . . bar[]" most second or successive petitions. Jamison v. United States, 244 F.3d 44, 47 (1st Cir. 2001).

For present purposes, however, the important point is that a habeas petitioner has to clear whatever hurdle applies -- the McCleskey standard pre-AEDPA and section 2244(b)(2)'s restrictions thereafter -- only if the later-filed petition was "second or successive." See Goodrum, 824 F.3d at 1193. And although AEDPA substantially restricted federal courts' ability to consider the merits of "second or successive"

petitions, it did not "redefine what qualifie[d] as a successive petition" in the first place.  Banister, 590 U.S. at 515; see Magwood, 561 U.S. at 336-37 (distinguishing section "2244(b)'s threshold inquiry into whether an application is 'second or successive'" from "its subsequent inquiry into whether claims in a successive application must be dismissed"); Goodrum, 824 F.3d at 1193 ("Whether a petition is second or successive remains a threshold question under [section] 2244(b), just as it was under the pre-AEDPA regime.").

It follows that if pre-AEDPA courts screened later-filed petitions asserting ineffective assistance claims in circumstances like those present here for abuse of the writ, they first would have determined them to be "second or successive." 28 U.S.C. § 2244(b)(2).  This, in turn, would indicate that Anderson's petition should be treated similarly.  See Banister, 590 U.S. at 515; Slack, 529 U.S. at 486 ("[W]e do not suggest the definition of second or successive would be different under AEDPA.").  But if, on the other hand, courts addressed the merits of such petitions without screening them for abuse of the writ, that would suggest that the petitions were not considered "second or successive" before AEDPA, and Anderson's likely should not be considered "second or successive" either.  Cf. Banister, 590 U.S. at 517 ("[A]fter AEDPA as before, . . . Rule 59(e) motions are not second or successive petitions.").

Petitions like Anderson's were unusual pre-AEDPA, and as far as we are aware, the Supreme Court has never considered a later-filed petition asserting an ineffective assistance claim in circumstances similar to those present here. Cf. Deutscher v. Angelone, 16 F.3d 981, 984 (9th Cir. 1994) ("We are faced with the unusual situation in which ineffective counsel represented a defendant not merely at trial and appeal, but also during [federal] collateral attack."); Douglas v. United States, 13 F.3d 43, 48 (2d Cir. 1993) ("[I]n the context of a [section] 2255 motion, . . . a movant is less likely to retain her trial counsel [than on direct appeal]."). But when the federal courts of appeals were presented with petitions like Anderson's, they consistently treated them as second or successive applications, subject to screening for abuse of the writ.[6]

---

[6]    See, e.g., Sinn v. Ratelle, No. 96-55773, 1997 WL 697310, at *1 (9th Cir. Nov. 4, 1997) (applying pre-AEDPA law and declining to excuse failure to raise ineffective assistance claim in first petition where "cause" offered for failure was counsel's "ineffective assistance on direct appeal and his inability to raise the issue of that ineffectiveness in the first habeas petition"); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996) (applying pre-AEDPA cause-and-prejudice standard to ineffective assistance of appellate counsel claim raised in second federal habeas petition, where appellate counsel and first federal habeas counsel were the same); Moran v. McDaniel, 80 F.3d 1261, 1270-71 (9th Cir. 1996) (similar); Booker v. Wainwright, 764 F.2d 1371, 1377 (11th Cir. 1985) (applying abuse-of-the-writ standard to ineffective assistance claim asserted in second federal habeas petition, where same counsel had represented petitioner from trial through first federal petition); In re Shriner, 735 F.2d 1236, 1239-40 (11th Cir. 1984) (similar); cf. Irving v. Hargett, 59 F.3d 23, 24-26

Some examples illustrate this practice. In Moran, the Ninth Circuit screened a later-filed petition asserting a claim of ineffective assistance of appellate counsel for abuse of the writ, even though the petitioner claimed that the same lawyer had represented him on direct appeal and during the first federal habeas proceedings, creating "a conflict of interest . . . [that] precluded his counsel from asserting his own ineffectiveness on direct appeal in his first post-conviction petition." Moran, 80 F.3d at 1271. Concluding that counsel's alleged conflict did not provide "cause" for the failure to assert the claim in the first petition, the Ninth Circuit held that the petition abused the writ. Id.

The Eleventh Circuit employed a similar approach in Booker. There, the petitioner was represented by the same counsel at trial, on direct appeal, and during an unsuccessful first round of state and federal habeas proceedings. Booker, 764 F.2d at 1373-74. Subsequently, the petitioner, represented by new counsel, filed a second federal habeas petition claiming, among other things, that his prior counsel had provided constitutionally ineffective assistance. Id. at 1374. Seeking "to excuse his

(5th Cir. 1995) (concluding that petition asserting same ineffective assistance claims as prior petitions abused writ, despite petitioner's argument that the prior denial of those claims by the district court had not been appealed because of allegedly ineffective counsel's conflict).

- 15 -

failure to raise the ineffectiveness of counsel claim in his first federal habeas corpus petition," the petitioner argued that his counsel had "labored under a conflict of interest" during the first proceedings and had led him to believe that an ineffective assistance claim would not be viable.  Id.

After a hearing at which the petitioner's former counsel testified that the petitioner had been advised of his option to assert an ineffective assistance claim but had declined to do so, the district court concluded that the petitioner's belated assertion of the claim abused the writ.  Id. at 1375.  The Eleventh Circuit agreed, relying in part on In re Shriner, where it had found abuse of the writ on "virtually identical" facts.[7]  Id. at 1377-78; see Shriner, 735 F.2d at 1240-41.

---

[7]     The only decision of which we are aware that declined to apply abuse-of-the-writ screening due to counsel's conflict is Bloomer v. United States, 162 F.3d 187, 191-92 (2d Cir. 1998).  In Bloomer, the Second Circuit, applying pre-AEDPA law, "effectively excuse[d]" the petitioner's failure to raise an ineffective assistance claim in his first section 2255 petition.  Bloomer, 162 F.3d at 192.  It did so "due simply to counsel's inherent conflict of interest," id., relying on Billy-Eko v. United States, 8 F.3d 111, 114 (2d Cir. 1993), which had held that the procedural default of an ineffective assistance claim caused by the failure to raise the claim on direct appeal in federal court could be similarly excused under certain circumstances.  This logic, however, likely would not apply to Anderson's petition: "[I]mportant federalism concerns" would preclude simply excusing the procedural default in state court of an ineffective assistance claim presented in a section 2254 petition.  See Smith v. Newsome, 876 F.2d 1461, 1466 n.5 (11th Cir. 1989).

This is not to say that, prior to AEDPA's enactment, counsel's conduct could never provide a basis to exempt a later-filed petition from the abuse-of-the-writ screening to which second-or-successive petitions were subjected. On at least one occasion, a federal court of appeals held that it could where the lawyer filed the first petition without the petitioner's authorization. See Deutscher, 16 F.3d at 984 (holding that a later-filed petition "[wa]s [the petitioner's] initial habeas corpus petition" and, as such, did not need to "meet the more stringent standards for second and subsequent petitions that may be deemed abuses of the writ," where counsel had filed the earlier petition without the petitioner's knowledge or consent). But see Williams v. Lockhart, 862 F.2d 155, 160 (8th Cir. 1988) (applying abuse-of-the-writ screening to a petition alleged to have been filed under similar circumstances).

The problem for Anderson, however, is that even Deutscher recognized that counsel's conflict of interest was not sufficient to justify disregarding the first petition. See Deutscher, 16 F.3d at 983. Anderson, unlike the Deutscher petitioner, authorized his first petition, and Attorney Hrones, acting in Anderson's interest and presumably at his direction, litigated the petition to a judgment on the merits. Although Anderson can, of course, attempt to assert additional claims in a subsequent petition -- including claims previously omitted

- 17 -

allegedly because of counsel's conflict -- there is no basis to permit him to disavow his first petition wholesale. See Nevius v. Sumner, 105 F.3d 453, 459 (9th Cir. 1996). Rather, as we have detailed, pre-AEDPA decisions are practically uniform in holding that under these circumstances Anderson's petition is "a second or successive habeas corpus application" subject to section 2244(b)(2)'s restrictions.

## B.

Examination of AEDPA's purposes confirms that Anderson's petition is properly treated as "a second or successive habeas corpus application," 28 U.S.C. § 2244(b). See Banister, 590 U.S. 512-13 ("[W]e have considered AEDPA's own purposes . . . [and] 'the implications for habeas practice' of allowing a type of filing[] to assess whether Congress would have viewed it as successive." (quoting Stewart, 523 U.S. at 644)); Panetti, 551 U.S. at 945-46 ("The[ statutory] purposes, and the practical effects of our holdings, should be considered when interpreting AEDPA."). AEDPA was intended "to 'conserve judicial resources, reduc[e] piecemeal litigation,'" "lend[] finality to state court judgments within a reasonable time," Banister, 590 U.S. at 512 (alterations original) (quoting Panetti, 551 U.S. at 945-46), and "further the principles of comity . . . and federalism," Panetti, 551 U.S. at 945 (quoting Miller-El v. Cockrell, 537 U.S. 322, 337 (2003)).

- 18 -

Exempting Anderson's petition from section 2244(b)(2) would not serve any of AEDPA's purposes. "[P]iecemeal litigation" would certainly result. Banister, 590 U.S. at 512 (quoting Panetti, 551 U.S. at 945-46). If we were to accept Anderson's argument, any petitioner represented in a first federal habeas proceeding by his trial and appellate counsel could automatically assert and litigate ineffective assistance claims challenging that lawyer's performance in a subsequent petition. "Under AEDPA, there is typically 'only one bite at the post-conviction apple.'" Trenkler v. United States, 536 F.3d 85, 100 (1st Cir. 2008) (quoting United States v. Barrett, 178 F.3d 34, 57 (1st Cir. 1999)); see also Jamison, 244 F.3d at 46 ("[Section 2244(b)(2)] imposes a one-bite rule with a pair of narrow but important exceptions."). Adopting Anderson's position would provide such petitioners with at least two.

The "finality of criminal convictions" would also be undermined, not only because a second round of federal habeas proceedings would necessarily call the subject criminal conviction back into question, but also because (as this case demonstrates) the second round of proceedings could occur decades after the conclusion of the first. Barrett, 178 F.3d at 38; see also McCleskey, 499 U.S. at 491 ("Finality has special importance in the context of a federal attack on a state conviction . . . [because r]eexamination of state convictions on federal habeas

- 19 -

frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." (internal quotations and punctuation omitted)). And none of this would "conserve judicial resources" or "respect[] the limited legal resources available to the States," Panetti, 551 U.S. at 946, as it would result in multiple rounds of habeas proceedings despite all relevant claims having been ripe for consideration when the first petition was filed.

Anderson objects to this line of analysis. He contends that AEDPA's "core principle" is that petitioners should have a "meaningful opportunity" to litigate the merits of constitutional challenges to their conviction. He derives this principle from Slack, Stewart, Panetti, and Magwood, as well as several other Supreme Court decisions addressing different aspects of the federal habeas regime. And he asserts that treating his petition as "second or successive" would contravene this one-meaningful-opportunity principle by depriving him of the chance to litigate ineffective assistance claims involving Attorney Hrones. We disagree.

AEDPA is intended to provide state prisoners with "one fair opportunity to seek federal habeas relief." See Banister, 590 U.S. at 507. But what that "fair opportunity" entails, id., can only be understood by reference to the statute. See Magwood, 561 U.S. at 335. And the Supreme Court has declined to interpret

"second or successive" to turn on whether the petitioner "had a full and fair opportunity to raise [the later-asserted claims] in a prior application" because such an interpretation would "undermine" section 2244(b)(2), which is meant to bar many claims that a petitioner did not have an opportunity to litigate. Id.; see Jamison, 244 F.3d at 47. For example, a claim in a later-filed petition based on newly discovered evidence that did not bear on the petitioner's innocence or on a new and non-retroactive rule of constitutional law likely could not have been asserted in a prior petition, let alone meaningfully litigated. See 28 U.S.C. § 2244(b)(2). Nevertheless, such claims are plainly barred. Magwood, 561 U.S. at 335.

Our decision in Bucci v. United States, 809 F.3d 23 (1st Cir. 2015), supports this conclusion. Bucci concerned a collateral proceeding brought by a federal prisoner under section 2255, which imposes similar restrictions on "second or successive" motions. Compare 28 U.S.C. § 2255(h), with id. § 2244(b)(2). The Bucci petitioner had previously filed a first, unsuccessful, section 2255 motion. See Bucci, 809 F.3d at 25. Several years after that motion was denied, he filed another section 2255 motion, asserting a Sixth Amendment violation. Id. The second motion alleged that the petitioner's trial counsel had ignored his instruction to seek a plea agreement and then told the petitioner, falsely, that the negotiations had been unsuccessful. Id. Trial counsel had

- 21 -

allegedly admitted that he had not attempted plea negotiations, but only after the denial of the first section 2255 motion. Id. The petitioner argued that the later-filed motion should be exempt from section 2255's restrictions on second-or-successive motions because he could not have raised the Sixth Amendment claim in his first motion. Id. at 27.

We rejected the Bucci petitioner's contention, concluding that adopting "[s]uch a narrow reading of 'second or successive' would run counter to 'the clear intent of Congress that stricter standards apply under AEDPA.'" Bucci, 809 F.3d at 27 (first quoting 28 U.S.C. § 2244(b)(2); and then quoting Sustache-Rivera, 221 F.3d at 13). We explained that "Congress recognized that 'cases might arise where, through no fault of the defendant, a ground for collateral attack was unavailable at the time of the first motion.'" Id. (quoting Jamison, 244 F.3d at 47). But because Congress adopted a scheme that permitted only two types of successive petitions to proceed, we concluded that "claims not within the two categories [we]re meant to be barred," id. (quoting Jamison, 244 F.3d at 47), even though the outcome may sometimes be "harsh," id. (quoting Rodwell v. Pepe, 324 F.3d 66, 72 (1st Cir. 2003)).

The outcome in Bucci arguably is harsher than the outcome here. Accepting the allegations in Bucci as true, the petitioner did not know the factual predicate for his Sixth Amendment claim

when he filed his first petition.  See Bucci, 809 F.3d at 25.  Not so for Anderson.  Anderson knew that he was represented by Attorney Hrones at trial and on direct appeal.  Presumably, Anderson knew (or at least easily could have learned) that ineffective assistance of counsel claims are commonly raised in habeas petitions.  And Anderson also knew, or should have known, that he was not required to have Attorney Hrones represent him as federal habeas counsel.  Anderson's choice to retain Attorney Hrones may have limited his ability to raise certain claims but, based on then existing information, Anderson could have balanced the potential disadvantages caused by any such limits against the benefits of retaining Attorney Hrones.[8]  Thus, unlike the Bucci petitioner, Anderson cannot say that the ineffective assistance of counsel claims that he seeks to raise now were truly unavailable to him when he filed his first petition.

Anderson makes several other arguments, but none are convincing.  First, he contends that any impact on finality is

---

[8]    Anderson's choice was by no means unreasonable. Attorney Hrones had already succeeded in securing federal collateral relief for Anderson once, see Anderson, 858 F.2d at 19, and, having subsequently represented Anderson at his second trial and through state post-conviction proceedings, was substantially familiar with Anderson's case.  The challenge to the allegedly defective provocation instruction that was the focus of Attorney Hrones's collateral attack on Anderson's second conviction, although ultimately unsuccessful, had some force, and one member of the panel in this Court would have granted Anderson's petition, see Anderson, 23 F.3d at 598-600 (Stahl, J., dissenting).

- 23 -

exaggerated because petitions asserting ineffective assistance claims under similar circumstances are uncommon.[9]  It may be that petitions like Anderson's are relatively rare; the limited precedent both before and after AEDPA's enactment suggests as much. See Lesko v. Sec'y of Penn. Dep't of Corr., 34 F.4th 211, 226 (3d Cir. 2022) (describing a similar claim as "unique").  But even so, the small number of such petitions would not support exempting them from section 2244(b) where historical practice and AEDPA's purposes indicate that they should be treated as "second or successive habeas corpus application[s]."  28 U.S.C. § 2244(b).

Anderson next observes that later-filed petitions asserting ineffective-assistance claims still must meet other procedural requirements for review.  He offers as an example procedural default, although others would apply too.  See, e.g., 28 U.S.C. § 2244(d).  But the extent to which these barriers might limit claims like Anderson's is beside the point.  Section 2244(b)'s restrictions are meant to operate in addition to other limitations imposed on habeas petitions.  See In re Davila, 888

_____

[9]     Anderson also claims that his proposed exemption from section 2244(b) would apply only to petitioners who were represented by the same lawyer at trial, on direct appeal, and in all prior habeas proceedings.  But because his argument is premised on habeas counsel's inability to argue their own ineffectiveness, any exemption would also logically apply where habeas counsel's representation began on direct appeal and the allegedly ineffective assistance serving as the predicate for the claim occurred during that appeal.

F.3d 179, 182 (5th Cir. 2018) (applying section 2244(b) and procedural default). That some claims asserted in a "second or successive" petition might fail for other reasons does not mean that we should, or can, decline to apply section 2244(b) in the manner that Congress prescribed.

Finally, Anderson asserts that an exemption to section 2244(b)(2) for later-filed petitions asserting new ineffective assistance claims would apply only to the subset of those petitions that present "substantial claims." Anderson does not elaborate on the point or explain where he locates a substantiality requirement. Nothing about the second-or-successive screening inquiry, however, involves measuring the substantiality of the claim, see 28 U.S.C. § 2244(b)(2), and a later-filed petition that is not "second or successive" may entirely lack merit. See, e.g., Bedford v. Bobby, 645 F.3d 372, 377-78 (6th Cir. 2011).

### C.

In concluding that Anderson's petition is "a second or successive habeas corpus application," we diverge from the Third Circuit's decision in Lesko v. Secretary of Pennsylvania Department of Corrections, 34 F.4th 211 (3d Cir. 2022). In Lesko, the Third Circuit, considering procedural facts materially identical to those presented here, held that "a second-in-time habeas petition [wa]s not second or successive to the extent it raise[d] an ineffective assistance of counsel claim that the

[petitioner] lacked opportunity to raise because the same counsel represented him both at trial and in his first round of habeas proceedings."[10] Lesko, 34 F.4th at 227.

In reaching that conclusion, the Third Circuit likened the Lesko petitioner's practical inability to raise his ineffective assistance claim in his first petition to the lack of ripeness and exhaustion that, respectively, had prevented the petitioners in Stewart and Slack from raising their claims. See Lesko, 34 F.4th at 226-27, 227 n.9. The court also relied on its decision in Benchoff v. Colleran, 404 F.3d 812 (3d Cir. 2005), in which it had stated that "a subsequent petition . . . [wa]s clearly not a 'second or successive petition' within the meaning of [section] 2244 if the claim had not arisen or could not have been raised at the time of the prior petition." See Lesko, 34 F.4th at 226-27 (quoting Benchoff, 404 F.3d at 817). And it observed that if the Lesko petitioner's application were barred as second or successive, then, "as a practical matter," the petitioner would "have never had a chance to bring" the ineffective assistance

---

[10] The Lesko petitioner's ineffective assistance claim was not subject to section 2244(b)'s restrictions for the separate reason that his prior habeas petition had succeeded in vacating his criminal judgment. See Lesko, 34 F.4th at 223-25. The conflicted-counsel holding that we address was an alternate ground for the Third Circuit's ruling, and did not depend on the fact that there had been an intervening judgment. See id. at 225.

- 26 -

claim, which would "completely evade federal habeas review." Id. at 227.

Our already lengthy discussion of Anderson's petition explains why, in our view, such a petition cannot avoid classification as "a second or successive habeas corpus application" based on the reasons provided in Lesko. 28 U.S.C. § 2244(b)(2). First, the fact that treating a later-filed petition as "second or successive" would result in a petitioner being foreclosed from pursuing certain claims is not a reason to exempt it from section 2244(b)(2). Magwood and Bucci make that clear, as do many other cases. See supra II.B. Second, Slack and Stewart do not exempt from section 2244's restrictions every claim that a petitioner could not previously have raised; rather, those cases held that under certain circumstances not present here, later-filed petitions were not "second or successive habeas corpus application[s]." See supra II.A. In any event, Anderson could have raised his ineffective assistance claims when he filed his first petition. His theory amounts, at most, to a contention that he could not have discovered the claims. AEDPA anticipates that possibility and makes a petition asserting such claims subject to section 2244(b)(2). See 28 U.S.C. § 2244(b)(2)(B).

Inasmuch as Lesko relied on Benchoff to conclude that the prior inability of the Lesko petitioner to assert his ineffective assistance claim meant that his later-filed petition

was not "second or successive," see Lesko, 34 F.4th at 226-27, we think that reliance was misplaced. In Benchoff, the Third Circuit employed the "abuse of the writ doctrine . . . as a means of determining when a petition should be deemed 'second or successive.'" Benchoff, 404 F.3d at 817 (quoting 28 U.S.C. § 2244(b)). As explained above, whether a certain type of petition was screened for abuse of the writ prior to AEDPA's enactment is useful for determining whether it should be viewed as "second or successive" under section 2244(b). But Benchoff appears to have focused on whether the later-filed petition was ultimately found to have abused the writ. See id. at 817-18. That approach conflates the "threshold inquiry into whether an application [wa]s 'second or successive,'" Magwood, 561 U.S. at 337, with the separate question of whether the second or successive application should be barred as abusive, see Goodrum, 824 F.3d at 1193; Sustache-Rivera, 221 F.3d at 13 ("[I]t does not follow that a petition is not second or successive simply because it does not violate the old abuse of the writ doctrine. Indeed such a rule would run counter to congressional intent.").

No other federal court of appeals has adopted Lesko's approach. The two to have considered whether a later-filed habeas petition asserting an ineffective assistance claim under circumstances like Anderson's should be deemed "second or successive" post-AEDPA reached decisions that support our

conclusion.  In <u>Nevius</u> v. <u>Sumner</u>, 105 F.3d 453 (9th Cir. 1996), the Ninth Circuit rejected the petitioner's argument that his "first habeas petition should not count . . . because his counsel were incapable of acting as his agents by reason of the conflict that precluded them from asserting their own ineffectiveness at trial and on appeal." <u>Nevius</u>, 105 F.3d at 459.  It concluded that the "second habeas petition must be treated as such," and affirmed the district court's dismissal of the petition due to the petitioner's failure to obtain pre-filing authorization under section 2244(b)(3).  <u>Id.</u> at 460.  Likewise, in <u>In re Magwood</u>, 113 F.3d 1544 (11th Cir. 1997) (per curiam), the Eleventh Circuit rejected the petitioner's argument that "his ineffective assistance of appellate counsel claim should not be considered successive because his appellate counsel also represented him during the first federal habeas proceeding," albeit without substantial discussion of the second-or-successive issue.  <u>In re Magwood</u>, 113 F.3d at 1550.

**III.**

In transferring Anderson's application to the district court, we also observed that Attorney Hrones's representation of Anderson during the first federal habeas proceedings might permit relief under Federal Rule of Civil Procedure 60(b), insofar as Anderson's application could be treated as a motion under that rule.  The district court, concluding that any Rule 60(b) motion

would have been untimely, denied relief. Anderson contends that this was an abuse of discretion. We disagree.

Assuming arguendo that Anderson's application could properly be considered as a Rule 60(b) motion, but see Gonzalez v. Crosby, 545 U.S. 524, 528-35 (2005); Bixby v. Stirling, 90 F.4th 140, 149-50 (4th Cir. 2023), it would not appear to attack a "defect in the integrity of the federal habeas proceedings," see Gonzalez, 545 U.S. at 532. Rather, the motion would challenge Anderson's own choice of counsel, who Anderson knew, or should have known, was limited by precisely the conflict about which he now complains. Cf. Clark v. Davis, 850 F.3d 770, 779 (5th Cir. 2017) (concluding that Rule 60(b) motion challenged defect in the proceedings where "[c]apital habeas petitioner[] ha[d] a statutory right to conflict-free counsel"); Ellis v. United States, 313 F.3d 636, 652 (1st Cir. 2002) (no right to counsel in federal habeas proceedings).

Moreover, as the district court justifiably concluded, Anderson's application came too late. The factual and legal bases for a Rule 60(b) motion had been available to Anderson since at least 2003. See Rodwell, 324 F.3d at 70-71. Anderson contends that the district court focused too narrowly on the delay, but it is sometimes the case that "one factor predominates to such an extent that it inexorably dictates the result," Ungar v. Palestine Liberation Org., 599 F.3d 79, 86 (1st Cir. 2010), and we think

- 30 -

that the approximately fifteen-year delay can fairly be said to predominate here, cf. Farm Credit Bank v. Ferrera-Goitia, 316 F.3d 62, 66 (1st Cir. 2003) (describing an approximately six-and-a-half-year delay as "extreme"), given the absence of any unusually compelling circumstances cutting in Anderson's favor.

Anderson argues that he had no meaningful opportunity to assert his ineffective assistance claims until non-conflicted counsel first appeared on his behalf in late 2017 and submits that this is the proper point of reference for determining the timeliness of his Rule 60(b) motion. "Rule 60(c)['s] timeliness requirements," however, "are not reset every time a litigant obtains a new attorney," Clark, 850 F.3d at 782, and although a delay to secure counsel might be properly discounted if it were fairly slight, see, e.g., Bouret-Echevarria v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 44 (1st Cir. 2015), or if the litigant had a right to counsel during the proceedings at issue, here neither condition obtains.

Moreover, excusing the substantial delay would be particularly unwarranted here because the record belies Anderson's contention that he was unable to assert his ineffective assistance claims meaningfully without counsel. It was Anderson, not counsel, who first identified the ineffective assistance claims he has presented here and Attorney Hrones's inability to assert those claims. And it was Anderson, not counsel, who filed his second

federal habeas petition in 2019. We see no reason why Anderson could not have sought to reopen his first federal habeas proceedings on substantially the same basis far earlier than he did. Cf. Bouret-Echevarria, 784 F.3d at 44 ("A reasonableness inquiry evaluates whether a movant acted promptly when put on notice of a potential claim."). There was no abuse of discretion in deeming the filing to be untimely under Rule 60.

## IV.

In sum, we hold that Anderson's habeas petition is "second or successive" under section 2244(b)(2), even though it raises ineffective assistance claims involving the same lawyer who previously represented him at trial, on direct appeal, and during his first federal habeas proceeding. 28 U.S.C. § 2244(b). Treating Anderson's petition as "a second or successive habeas corpus application" accords with pre-AEDPA practice and the purposes animating AEDPA's restrictions on "second or successive" petitions. Id.

Because Anderson's petition is "a second or successive habeas corpus application," the district court should have dismissed it, see 28 U.S.C. § 2244(b)(2); however, the district court denied the petition instead. We therefore **vacate** the denial and **remand** the petition to the district court with instructions that it be dismissed. Because the district court did not abuse its discretion in concluding that Anderson's petition, if

construed as a Rule 60(b) motion, would not warrant relief, we **affirm** that aspect of the district court's order.

**So ordered**.